196 N.J. Super. 378 (1984)
482 A.2d 954
ARTHUR FOSS & ELEANOR FOSS, H/W, PLAINTIFFS,
v.
ANTHONY MICHAEL CIGNARELLA AND ESTATE OF ANTHONY MICHAEL CIGNARELLA, DEFENDANTS.
ARTHUR FOSS & ELEANOR FOSS, PLAINTIFFS,
v.
NEW CHINA ROYAL, INC., A N.J. CORP., THE TRAVELERS INDEMNITY CO., A CONN. CORP., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided July 12, 1984.
*379 James R. Gregory for plaintiffs (Maraziti, Kalish & Gregory, attorneys).
James E. Trabilsy for defendants Cignarella (Wilentz, Goldman & Spitzer, attorneys).
Eugene Smith for defendant The Travelers Indemnity Co. (Farabaugh & Frieland, attorneys; James H. Garrabrandt on the brief).
Marvin S. Lieberman, for defendant Prudential (Lieberman, Ryan, Richardson, Welaj & Miller, attorneys).
George M. Fieldman for defendant New China Royal (Weiner, Ostrager, Fieldman & Zucker, attorneys).
*380 GAYNOR, J.S.C.
This case presents a novel factual basis for a claim against an insurer for injuries inflicted by the operator of the insured vehicle. In our opinion, the coverage afforded by the automobile policy does not extend to the incident resulting in injury to plaintiff.
Defendant, Travelers Indemnity Company (Travelers), moves for summary judgment dismissing the complaint and cross-claims in these consolidated actions wherein plaintiffs seek recovery for injuries sustained by plaintiff, Arthur Foss (Foss), as a result of a stabbing by Travelers' insured, Anthony Cignarella (Cignarella), following an accident involving automobiles being operated by Foss and Cignarella. As there are no genuine issues of any material facts relating to the liability of Travelers, it is appropriate that this issue be determined on motion. R. 4:42-2.
According to plaintiffs' pleadings and certifications, Foss was traveling south on Route 287 in the area of Bernards Township on September 26, 1981. As he was proceeding in the third, or fast, lane of the highway, an automobile being driven by Cignarella attempted to pass him on the left by traveling on the median and, in so doing, sideswiped Foss' vehicle. Both drivers thereupon brought their cars to a stop on the shoulder of the road. However, Foss' vehicle rolled forward, bumping into the rear of Cignarella's car. Cignarella flew into a rage and ran up to Foss' vehicle, and stabbed Foss in the chest, while he was seated in his vehicle with the door closed but the window partially open. Cignarella returned to his car and drove away. Cignarella appeared to Foss to be drunk  slurring his speech and reeking of alcohol. He was subsequently apprehended by the police and charged with certain criminal offenses arising from the incident. About three weeks later, he committed suicide. Although Foss did not suffer any injury from the impact between the two vehicles, he seeks recovery from Travelers, *381 as the insurer of the vehicle operated by Cignarella, for the injuries resulting from the stabbing.
In moving for judgment in its favor, Travelers contends that plaintiff's injuries did not arise out of the operation or use of the insured automobile, nor could the parties to the insurance contract reasonably contemplate that conduct, such as engaged in by Cignarella and resulting in the injury to plaintiff, would be a natural consequence of the use of the vehicle or a risk which they might reasonably expect to be insured against under the policy. Plaintiffs, on the other hand, assert that the circumstances surrounding the criminal conduct of Cignarella support a conclusion that the injury inflicted upon Foss originated from, or grew out of, the use of the insured vehicle by Cignarella, and that his conduct should be considered as being within the contemplation of the contracting parties as a foreseeable consequence of the use of the automobile by Cignarella in his intoxicated condition.
As authority for their respective positions, both parties rely upon the construction, in the case of Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div., 1973), of an insurance policy clause providing coverage for an "accident arising out of the ... use" of the insured's automobile. In concluding that such coverage existed where a bicyclist was injured by a stick thrown by a passenger from the insured's moving vehicle, the court enunciated the following principles with respect to the interpretation of the subject provision:
But we do not agree that the words "arising out of the * * * use" require or justify the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strick legal sense, of the use of the automobile. We think that such a construction would do equal violence to the normal meaning of those words. Specifically, the policy does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation. If such a meaning was intended to be projected by this important clause of the standard family automobile policy, it is difficult to understand why a phrase which clearly conveyed the idea of proximate causation, such as "caused by" or "resulting from," was not employed.
We consider that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use *382 of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. See 7 Am.Jur.2d, § 82 at 387 (1963). Whether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case. [at 37-38]
As stated in Westchester Fire, while it is only necessary that there be a substantial connection between the injury and the insured vehicle, a determinative factor is whether the act causing the injury was "in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." In concluding that the act of the passenger, in throwing the stick from the automobile, was a sufficiently foreseeable consequence of the use of the automobile to mandate coverage, the court cited the general knowledge that it is not uncommon for objects, such as lighted cigarettes, food and drink containers and other debris, to be thrown or permitted to fall from moving vehicles. However, a distinction was noted between a stick being thrown from a car and the ejection of intrinsically dangerous objects, such as bombs, firecrackers or gunshots, and it was observed that courts in other jurisdictions generally hold that no coverage exists because of the absence of any causal connection between the discharge of guns, or similar dangerous objects, and the use of the vehicle. See Annotation, "Automobile Liability Insurance: what are accidents or injuries `arising out of ownership, maintenance or use' of insured vehicle," 89 A.L.R.2d 150 (1963), as supplemented, 89 A.L.R.2d 150.
In considering the applicability of these principles to a case involving the issue of uninsured motorist's coverage for a fatal injury resulting from the firing of a shotgun by a passenger from a moving vehicle, the court in Sciascia v. American Ins. *383 Co., 183 N.J. Super. 352 (Law Div. 1982), concluded that such conduct could not be considered as arising out of the use of the automobile as it was not an incident which, in the contemplation of the parties to the insurance contract, was a natural and probable consequence of the use of an automobile. Thus, there was not substantial connection between the use of the vehicle and the injury. The use of the car was merely incidental to the causative act of the passenger firing the shotgun. In reaching this conclusion, the court commented as follows:
The deliberate firing of a shotgun by the passenger Stires from a moving vehicle, with the knowledge of  and participation and assistance by  the driver Counterman, cannot be considered to have arisen out of the use of Counterman's vehicle. There was no substantial connection between the insured's death and the use of the uninsured automobile by Counterman and Stires. More specifically, this unfortunate occurrence, although unforeseen and unexpected by decedent insured, was not one which, in the contemplation of the parties to the UM contract, was a natural and probable incident or consequence of the use of an automobile by an uninsured motorist. It was not a risk against which the insurer and the insured might reasonably expect that protection would be afforded under a policy providing uninsured motorist coverage. [at 358-359]
A similar result was reached in Uzcatequi-Gaymon v. N.J. Mfrs. Ins. Co., 193 N.J. Super. 71 (App.Div. 1984), in which PIP benefits were sought for the death of plaintiff's decedent who was shot and killed by persons attempting to rob him of his automobile. The incident occurred while the decedent's car was parked next to a phone booth which was being used by the decedent. In holding that the incident was not "an accident involving an automobile" within the meaning of the no-fault law, the court observed:
Nevertheless, in our view, while theft of the automobile may have been the ultimate object of the attack, from a legal viewpoint the automobile was not the cause of the decedent's injuries and death. Rather, the cause of his injuries and death was the act of robbery committed by his assailants. That the automobile was the object of the robbery was merely an attendant circumstance and did not transform this incident into "an accident involving an automobile".... [at 73]
....
In the case at hand we conclude that, although decedent's assailants may have attempted to rob him of the keys to his car, there was an insufficient causal connection between the shot fired by his attackers and the automobile to *384 consider the killing an accident involving an automobile within the meaning of the New Jersey Automobile Reparation Reform Act as it existed in 1981. [at 75]
The application of these principles to the circumstances of the present case leads to the conclusion that the stabbing of plaintiff, Foss, by the intoxicated Cignarella did not arise out of the use of the insured vehicle by Cignarella. This act of Cignarella, however reprehensible and unfortunate, was not causally connected with his operation of the automobile. It did not originate from the use of the vehicle as such, nor can it be said that it arose out of, or was connected with, the inherent nature of the automobile. At best, the connection between plaintiff's injury and the insured vehicle was that Cignarella's use of the car permitted him to be at the place where he committed his attack upon plaintiff, or, "but for" his use of the automobile and the ensuing accident, the assault upon the plaintiff would not have occurred. This is not the substantial nexus required between the use of the insured vehicle and the injury to impose liability upon the insurer. But even if it be considered that the stabbing was sufficiently related to the Cignarella vehicle as to constitute conduct arising from his use thereof, it would be unreasonable to conclude that the parties to the insurance contract contemplated that the policy would insure against such an incident. Unlike debris being thrown from, or falling out of, a moving vehicle, the commission of an assault with a weapon by one driver involved in an automobile accident upon the driver of the other vehicle, is such an uncommon and bizarre occurrence that neither the insurer nor the insured would consider it to be a natural and reasonable consequence of the use of the insured vehicle. In reaching this conclusion we are cognizant of the rules that an insurance policy is to be liberally construed in favor of coverage and that the scope of coverage should comport with the reasonable expectation of the insured.
Further, we discern no reason why an unintentional, rather than an intentional, act would render the conduct more closely *385 connected with the use of the insured vehicle. While the policy may not insure against injury resulting from intentional acts of the insured, Travelers' claim of non-coverage is not based upon any such exclusionary provision.
Accordingly, Travelers' motion for summary judgment dismissing the complaint and cross-claims as to it will be granted.