866 P.2d 976

**HAWKEYE–SECURITY INSURANCE COMPANY, an Iowa insurance company, Plaintiff–Respondent,**

v.

**Cordon L. GILBERT and Terri M. Gilbert, husband and wife, Defendants–Respondents,**

and

**Greg Laragan, an individual, Defendant–Appellant.**

No. 20213.

Court of Appeals of Idaho.

Jan. 3, 1994.

Ringert, Clark Chtd., James P. Kaufman, Boise, argued for appellant.

Brady, Lerma & Thomas Chtd., John J. Lerma, Boise, argued for respondent Hawkeye–Security Ins. Co. Respondents Gilbert did not appear or present argument on appeal.

LANSING, Judge.

This case presents an unusual factual background for a claim against an automobile insurer for injuries inflicted on a bicyclist by the owner of the insured vehicle. We conclude that the automobile liability insurance coverage does not extend to the incident that resulted in the bicyclist's injuries.

Hawkeye–Security Insurance Co. ("Hawkeye") instituted this declaratory judgment action to determine whether an automobile insurance policy issued by it to Cordon L. Gilbert covers injuries sustained by the bicyclist, Greg Laragan. On cross-motions for summary judgment, the district court granted summary judgment in favor of Hawkeye, and Laragan appeals. We affirm the well-reasoned decision of the district court.

## I. BACKGROUND

The facts giving rise to this litigation can be summarized as follows. On July 26, 1990, Gilbert and Laragan were involved in an incident on Eagle Road in Ada County, Idaho. Laragan was riding his bicycle northbound on Eagle Road when Gilbert ap-

proached from behind in his automobile. Gilbert allegedly observed Laragan swerving back and forth in the lane of traffic. As Gilbert started to pass, Laragan moved into Gilbert's lane, causing Gilbert to hit his brakes and honk his horn for several seconds. Gilbert pulled alongside Laragan, gestured at Laragan with his fist and finger, and shouted at him. Laragan nodded his head to acknowledge Gilbert's presence, but did not turn his head in that direction. After staying beside Laragan for about one hundred yards, Gilbert drove ahead of Laragan and pulled off the road onto the graveled shoulder. As Gilbert rolled down his window in an attempt to speak to Laragan, Laragan rode by without stopping and continued north on Eagle Road. Gilbert pursued, overtaking and passing Laragan. At the crest of a hill, Gilbert observed a wide spot about seventy-five to one hundred yards ahead where he could pull off the road. Gilbert parked the car on the right shoulder of the road, rapidly got out of his car, and took a position near the center of the road. Gilbert stood with his hands on his hips, and, as Laragan approached, extended his left arm in the manner of a traffic officer directing a vehicle to stop. Laragan attempted to pass between Gilbert and his automobile. As he did so, Gilbert touched Laragan in some way, causing Laragan to fall from his bicycle. Laragan states that it felt as if Gilbert had grabbed his left arm. Gilbert denies having grabbed Laragan and states that he believes that he and Laragan hit elbows. As a result of his fall, Laragan suffered a compound fracture of the right tibia, a fracture of the right fibula, and numerous cuts, scrapes and bruises. At the time of the incident, Gilbert's car was completely stopped with the motor turned off, and the automobile at no time came into physical contact with Laragan. Gilbert was arrested and charged with aggravated battery, I.C. § 18–907, but was acquitted following a jury trial. Except for the noted disagreement regarding Gilbert's manner of touching Laragan, which is not material to our inquiry on this appeal,[1] these facts were undisputed for purposes of the summary judgment motion.

Laragan made a claim against Gilbert and his automobile insurance carrier, Hawkeye, to recover damages for his injuries. Hawkeye denied the claim and filed this declaratory judgment action asking the court to determine that the policy issued to Gilbert does not obligate Hawkeye to provide a defense for Gilbert or to indemnify Gilbert for any liability he may bear toward Laragan.

Both parties moved for summary judgment. The district court granted summary judgment in favor of Hawkeye, holding that Gilbert's potential liability was not covered by the insurance policy because Laragan's injuries did not arise from the ownership, maintenance or use of the insured automobile. Laragan appeals, contending that because Gilbert was driving the car when he initially encountered Laragan, and because Gilbert used the automobile to overtake and stop Laragan and to cut off Laragan's potential escape along the shoulder of the road, Gilbert's actions were within the coverage of the policy.

That portion of the insurance policy governing the scope of coverage states:

> A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.... We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

While the term "auto accident" is not defined in the policy, both Hawkeye and Laragan recognize that, pursuant to this state's Motor Vehicle Financial Responsibility Act, I.C. §§ 49–1201 et seq., an owner's policy of liability insurance must insure the named insured "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of the [insured] motor vehicles...." I.C. § 49–1212(1)(b). Because the policy's language does not provide for coverage greater than that mandated by I.C. § 49–1212(1)(b), the parties agree that the scope of coverage afforded by the Hawkeye policy is that prescribed by the statute. Accordingly, the question presented is

---

1. This factual dispute would be relevant if the court were considering application of a policy exclusion precluding coverage for injuries caused by the insured's intentional acts.

whether Laragan's injuries arose out of Gilbert's "use" of his automobile.[2]

Laragan argues that his injuries did in fact arise out of Gilbert's use of his vehicle in two fashions. First, it was while Gilbert was driving his automobile that he initially encountered Laragan, became irritated at Laragan, and pursued and overtook him. This use, he asserts, ultimately led to the incident where Laragan was injured. Second, Laragan contends that Gilbert used his parked automobile to block Laragan's escape along the right-hand shoulder of the roadway, making the automobile an instrumentality that aided in causing the injuries. The district court concluded there was not a sufficient causal relationship between the use of the vehicle and Laragan's injuries and, therefore, held that the automobile insurance policy did not afford coverage.

## II. STANDARD OF REVIEW

■ Ordinarily, on appeal from a summary judgment, we review the facts to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978); *Gro–Mor, Inc. v. Butts,* 109 Idaho 1020, 712 P.2d 721 (Ct.App.1985). However, on this appeal Laragan does not contend that there are material factual issues which preclude summary judgment. Therefore, our review is limited to a determination of whether Hawkeye is entitled to judgment as a matter of law. This requires interpretation of I.C. § 49–1212 and application of that statute to the facts of the case. This is a question of law which we freely review. *Hix v. Potlatch Forests, Inc.,* 88 Idaho 155, 159, 397 P.2d 237, 241 (1964).

## III. ANALYSIS

The issue of whether a particular act constitutes "use" of an insured vehicle for purposes of insurance coverage has frequently been the subject of litigation in other jurisdictions where the courts have construed the

term as it is used in insurance policies or in statutes similar to I.C. § 49–1212. *See generally* Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership Maintenance, or Use" of Insured Vehicle,* 15 A.L.R.4th 10 (1982). Our appellate courts have considered the issue on only one prior occasion, in *State Farm Mutual Automobile Insurance Co. v. Smith,* 107 Idaho 674, 691 P.2d 1289 (Ct.App.1984). In *Smith,* an occupant of a parked motor home was shot when a shotgun discharged while being pulled across a bed. We held that the insurance policy issued by State Farm did not provide coverage for the passenger's death because the accident did not arise out of the use of the motor home. We explained:

> The policy provision requiring the injury to "arise out of the use" of the vehicle connotes a causal relation between the injury and the use. The causal connection must be more than incidental or fortuitous. The accident and resulting injury must have arisen out of the inherent nature of the automobile in order to bring it within the terms of the "use" clause. [Citations omitted.]

*Id.* at 675, 691 P.2d at 1290. We concluded that the accident "was caused by the negligent handling of a loaded firearm, not by the type of use associated with the inherent nature of the motor home," which was "merely the situs of the accident." *Id.* at 676, 691 P.2d at 1291.

■ Although our decision in *Smith* interpreted the term "use" as it appeared in an automobile insurance policy, we think the same analysis applies to interpretation of the term in I.C. § 49–1212, which governs the content of such policies. Therefore, under the law announced in *Smith,* liability insurance coverage will be afforded in the present case only if Laragan's injury was causally connected to Gilbert's use of the automobile and that use of the vehicle was related to the inherent nature of the automobile.

---

**2.** There is no contention that Laragan's injuries arose from the "ownership" or "maintenance" of the automobile.

A. *Use of the Vehicle at the Time of Initial Encounter and to Overtake Laragan.*

We consider first Laragan's argument that the fact that Gilbert was driving the car when he initially observed and became troubled by Laragan and overtook Laragan creates a sufficient causal relationship.

As *Smith* illustrates, courts confronted with this issue agree that a causal relation or connection must exist between an accident or injury and the "use" of a vehicle in order for the accident or injury to come within the meaning of the clause "arising out of the use" of a vehicle. Where such causal connection or relation is absent, coverage will be denied. *See generally,* 6B JOHN A. APPLEMAN, INSURANCE LAW & PRACTICE § 4316 (1979); *Scheafer, supra.* Although the causal nexus need not rise to the level of proximate cause, the mere fact that the injury occurred in or near an automobile does not lead inexorably to the conclusion that there is coverage. It is not enough to say that "but for" the use of the automobile, the injury would not have occurred. There must be some substantial nexus between the use of the vehicle and the injury.

Cases from other jurisdictions involving facts analogous to those presented here have noted the absence of a minimal causal connection between the injury and the vehicle and have denied coverage. While this Court is not bound by these decisions, their reasoning is persuasive.

Among the cases we relied upon in *Smith* was *Kangas v. Aetna Casualty & Surety Co.,* 64 Mich.App. 1, 235 N.W.2d 42 (1975). In *Kangas,* a vehicle owned and driven by Kangas, and insured by Aetna, pulled over opposite a pedestrian, and some or all of the occupants left the car and proceeded to assault and batter the pedestrian. Aetna refused to defend Kangas in the subsequent civil action brought by the pedestrian. Assuming that the "intentional acts" exception to the policy was inapplicable, the *Kangas* court specifically rejected a "but for" test for causation. There, the insured argued that but for the automobile, the driver and his passengers would not have been at the scene of the accident; but for the automobile, the pedestrian would not have been asked if he wished a ride; and but for the invitation to a ride, the pedestrian and a passenger would not have argued, with the resulting assault and battery on the pedestrian. The court rejected this remote causation stating:

> [W]e conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.... The use of the vehicle had no connection with the unexpected subsequent altercation between the passenger Giddis and the pedestrian.

*Id.* 235 N.W.2d at 50.

In *United Services Automobile Association v. Ledger,* 189 Cal.App.3d 779, 234 Cal. Rptr. 570 (1987), Tippitt, USAA's insured, made a sudden lane change which required Arters to take evasive action to avoid a collision. Arters followed Tippitt and, when Tippitt drove into a parking area, Arters pulled his vehicle alongside, blocking any further movement of Tippitt's vehicle. Arters challenged Tippitt to fight, and Arters was fatally stabbed. While recognizing that "arising out of the use" of the motor vehicle means that there must be only some minimal causal connection between the injury and the vehicle, the *Ledger* court held that there was an insufficient causal connection to afford coverage.

> The fatal injury was inflicted approximately five miles from the inadvertent lane change and only after Arters followed Tippitt to the Valley Meadow Road location. The stabbing itself, however regrettable and unfortunate, was not causally connected with Tippitt's use of the vehicle [n]or can any stretch of the imagination bring the stabbing incident within the contemplation of the parties to the insurance contract. As pointed out by [USAA], the vehicle served only to transport Tippitt to the scene where the stabbing took place. Therefore, we conclude that there was an

insufficient causal connection between the stabbing and the vehicle to consider that the former "arose out of the use" of the latter.

*Id.* 234 Cal.Rptr. at 572.

The decision in *Ledger* was based in large measure upon the decisions in *Rustin v. State Farm Mut. Auto. Ins. Co.*, 254 Ga. 494, 330 S.E.2d 356 (1985), and *Foss v. Cignarella*, 196 N.J.Super. 378, 482 A.2d 954 (1984). In *Rustin*, Spain, insured by State Farm, stopped behind Rustin at a stoplight. When the light changed, Rustin did not proceed through the intersection. After sounding his horn several times to alert Rustin that the light had changed, Spain drove around him. A short distance away, Rustin's automobile struck the rear bumper of Spain's vehicle. Rustin sped off, with Spain in pursuit. After a brief chase, both men stopped and exited their vehicles. Rustin charged at Spain, who then shot Rustin. The Georgia Supreme Court held that Rustin's death was not caused by the "use" of Spain's automobile, so as to trigger the liability coverage section of Spain's policy with State Farm.

> The evidence strongly indicates that the conflict developed between Rustin and Spain as a result of the incident at the stoplight and the further incident in the driveway. We agree with appellants that there is a relationship between these incidents and the ultimate death of the victim. That there is such relationship, however, does not mean that Rustin's death was a result of Spain's *use* of the automobile. Spain's car was *employed for the purpose* of transporting him to the scene of his final encounter with Rustin. Rustin's death did not result from the employment of the vehicle for any further purpose. Rather, Rustin's death resulted from the employment of the pistol, either to frighten the deceased or to kill him, whether maliciously or in self-defense. It is clear that beyond transporting Spain to the scene of Rustin's death, the car was not *used* for any purpose regarding the death within the meaning of the liability insurance policy in question.

*Rustin*, 330 S.E.2d at 358 (emphasis in original).

In *Foss*, Cignarella, the insured, side-swiped Foss's vehicle. Both drivers stopped on the shoulder of the road; however, Foss's vehicle rolled forward, bumping into the rear of Cignarella's car. Cignarella flew into a rage, exited his vehicle and stabbed Foss in the chest while Foss was seated in his car with the door closed but the window partially open. Holding that the stabbing of Foss by Cignarella did not arise out of the use of the insured vehicle by Cignarella, the *Foss* court reasoned:

> This act of Cignarella ... was not causally connected with his operation of the automobile. It did not originate from the use of the vehicle as such, nor can it be said that it arose out of, or was connected with, the inherent nature of the automobile. At best, the connection between plaintiff's injury and the insured vehicle was that Cignarella's use of the car permitted him to be at the place where he committed his attack upon plaintiff, or, "but for" his use of the automobile and the ensuing accident, the assault upon the plaintiff would not have occurred. This is not the substantial nexus required between the use of the insured vehicle and the injury to impose liability upon the insurer. But even if it be considered that the stabbing was sufficiently related to the Cignarella vehicle as to constitute conduct arising from his use thereof, it would be unreasonable to conclude that the parties to the insurance contract contemplated that the policy would insure against such an incident.

*Foss*, 482 A.2d at 957.

Similarly, in *Holm v. Mutual Service Casualty Co.*, 261 N.W.2d 598 (Minn.1977), it was held that injuries sustained by Holm as a result of an alleged tortious battery inflicted by a police officer did not arise out of the use of the police car where the vehicle was used merely to transport the officer to the scene. After noting that Minnesota requires only "at a minimum some causal relationship between the use of a vehicle and the injury for which coverage is sought," *id.* at 602, the *Holm* court reviewed several cases, including *Kangas*, and concluded that:

> In each of these decisions the acts of leaving the vehicle and inflicting a battery

were viewed as events of independent significance which broke the causal link between the "use" of the vehicle and the injuries inflicted. And this was so in spite of the fact that in each instance the subject auto was used to transport the tortfeasor(s) to the scene of the incident. Read together, the cases fully support the general proposition that for an injury to "arise out of the use" of an automobile, it must be causally related to the employment of the vehicle for transportation purposes.

*Id.* at 603. *See also Lindsey v. Sturm,* 436 N.W.2d 788 (Minn.Ct.App.1989) (rejecting a "but for" causation test and holding that battery which resulted from argument over parked position of insured vehicle did not arise out of use of the vehicle); *Fowler v. State Farm Mutual Auto. Ins. Co.,* 548 So.2d 830 (Fla.Dist.Ct.App.1989) (no coverage where a near-collision in a parking lot escalated into a confrontation and shooting).

▇ Laragan seeks to distinguish most of the foregoing cases and similar decisions on grounds that they involved firearms or criminal acts. These cases are inapplicable, he asserts, because Gilbert was acquitted by a jury of any criminal conduct. We find this distinction insignificant. None of the decisions above nor those relied upon by the district court turned upon a factual finding of guilt or innocence in a criminal proceeding; for the most part, they do not mention whether criminal charges were brought. Nor does the fact that a firearm was involved in some cases make them any less relevant. Each decision turned upon the nature of the causal relationship between the automobile and the injury.

Laragan's theory of causation is similar to those asserted by the injured parties in the foregoing cases. He argues that but for Gilbert's use of his automobile he would not have approached Laragan riding his bicycle, would not have become angry or concerned about Laragan's cycling, and would have been unable to pass Laragan and attempt to stop him. This "but for" causation analysis, however, was eschewed by this Court in *Smith* and by the courts of virtually all jurisdictions that have considered it in analogous cases.

Laragan's injuries did not arise out of Gilbert's use of his vehicle in initially encountering Laragan and subsequently driving to the scene of the injury. Such use of the automobile merely enabled Gilbert to be at the situs of the confrontation. Gilbert's acts of leaving his car, walking onto the roadway and making physical contact with Laragan as he attempted to pass were independent acts that caused the injuries. A contrary view would, if carried to its logical conclusion, "attach automobile insurance coverage to every accident which occurred after an insured had first been transported by automobile." *Aetna Casualty and Surety Co. v. Safeco Insurance Co.,* 103 Cal.App.3d 694, 163 Cal.Rptr. 219, 223 (1980).

**B.** *Use of the Vehicle to Block Laragan's Escape Along the Shoulder of the Road.*

Laragan contends that, aside from using the vehicle to transport Gilbert to the point of their initial meeting and the situs of Laragan's injury, Gilbert also used the car as an aid in stopping Laragan. He postulates that Gilbert deliberately parked his vehicle on the right shoulder of the roadway in order to cut off Laragan's escape and force him to stop.

▇ Even assuming that such utilization of the vehicle by Gilbert bears the requisite causal relationship to Laragan's injuries—a relationship that is more than merely incidental or fortuitous—we conclude it is not a use that is within the scope of Gilbert's insurance policy.

▇ In *State Farm Mutual Automobile Insurance Co. v. Smith, supra,* we held that, to be subject to coverage, a use of the insured vehicle must not only be causally related to the injuries but also must be related to "the inherent nature of the automobile." *Smith,* at 675, 691 P.2d at 1290. Whether a particular employment of an automobile is related to its inherent nature turns upon whether the use is associated with the automobile's normal and expected function as a mode of transportation. *See Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598, 603 (Minn.1977) ("for an injury to 'arise out of the use' of an automobile, it

must be causally related to the employment of the vehicle for transportation purposes"); *Akerly v. Hartford Insurance Group*, 136 N.H. 433, 616 A.2d 511, 515 (1992) (the term "use" means the normal use for which a vehicle is intended); *Tomlin v. State Farm Mutual Automobile Liability Insurance Company*, 95 Wis.2d 215, 290 N.W.2d 285, 290 (1980) ("use" means "the use of a vehicle as such and does not include a use which is completely foreign to a vehicle's inherent purpose"). In making this inquiry, it is helpful to consider whether, in using the vehicle, the tortfeasor was behaving as a motorist, passenger or transporter of goods, or was acting in some capacity unrelated to motoring. *See Day v. State Farm Mutual Insurance Company*, 261 Pa.Super. 216, 396 A.2d 3, 5 (1978) (driver who, after a collision, alighted from his vehicle and engaged in a fistfight with the other driver "was clearly not behaving as a motorist" at the time of the assault); *Akerly v. Hartford Insurance Group, supra* (driver who, after being placed under arrest, injured police officer in scuffle outside the car was not "behaving as a motorist" when the injury occurred).

Some courts have approached this issue from the perspective of the intent of the parties to the insurance contract. For example, in *Tomlin v. State Farm Mutual Automobile Liability Insurance Company, supra*, the court stated:

> The issue is whether the vehicle's connection with the activities which gave rise to the injuries is sufficient to bring those general activities, and the negligence connected therewith, within the risk for which the parties to the contract reasonably contemplated there would be coverage. This question is usually resolved by determining whether the alleged "use" is one which is reasonably consistent with the inherent nature of the vehicle.

*Id.* at 290 N.W.2d 285, 290, quoting from *Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514, 518 (1976). Similarly, in *Commercial Union Insurance Co. of New York v. Hall*, 246 F.Supp. 64, 65 (E.D.S.C.1965), the court held that use of a vehicle to run another driver off the road and block his escape was not a "use" reasonably contemplated by the insurer and the insured.

Use that relates to a vehicle's inherent nature is not limited to the vehicle's actual operation. It extends to activities that are reasonably expected as normal incidents to the automobile's operation. Such incidental activities to which insurance coverage has been held to apply include entering and exiting the vehicle, *Bolton v. North River Insurance Co.*, 102 So.2d 544 (La.Ct.App.1958) (slamming a door on a person's hand); *National Indemnity Co. v. Farmers Home Mutual Ins. Co.*, 95 Cal.App.3d 102, 157 Cal. Rptr. 98 (1979) (child exiting vehicle and crossing street when hit by oncoming car); loading and unloading, *Perryman v. Citizens Ins. Co. of America*, 156 Mich.App. 359, 401 N.W.2d 367 (1986); holding goods or animals while the vehicle is parked, *Transamerica v. Farmers Ins. Exchange*, 463 N.W.2d 641 (N.D.1990) (pedestrian bitten by a dog while the dog sat in the back of a pickup truck and the pedestrian stood on the sidewalk); and normal maintenance or repairs, *Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1981) (putting gas into vehicle); *United Services Automobile Association v. United States Fire Ins. Co.*, 36 Cal.App.3d 765, 111 Cal.Rptr. 595 (1974) (starting car while gas was being poured into carburetor).

█ Nonetheless, "use" that relates to the inherent nature of the vehicle, for which liability insurance coverage is mandated by I.C. § 49–1212(1)(b), does not extend to every utilization of a motor vehicle that may be devised. Here, if Gilbert used his automobile to block Laragan's avenue of movement or escape, this was not a use of the vehicle as a vehicle but as a barricade. When Gilbert parked his car in a position to narrow the area available for Laragan's passage and exited the vehicle to confront Laragan, he abandoned his role as a motorist and also abandoned any use of the car reasonably related to its inherent nature as a vehicle.

We find support for this conclusion in *Commercial Union Insurance Co. of New York v. Hall, supra*, where the court held there was no insurance coverage for a driver who pulled his vehicle in front of another automobile, forcing it to stop, and then used

his vehicle to block the other driver's escape on foot from impending fisticuffs. The court reasoned that this was not a type of "use" reasonably contemplated by the insurer and insured.

While utilization of an automobile to create a barrier or roadblock may be a normal and expected use if the automobile is a police car, *see, e.g., Oberkramer v. Reliance Insurance Co.*, 650 S.W.2d 300 (Mo.Ct.App.1983), it is not a normal use for ordinary motorists.

## IV. CONCLUSION

The district court correctly determined that Laragan's injuries did not arise out of "use" of the insured automobile within the meaning of I.C. § 49–1212(1)(b). Therefore, the summary judgment entered below is affirmed. Costs on appeal are awarded to Hawkeye–Security Insurance Company. No award is made for attorney fees as such an award has not been requested.

WALTERS, C.J., and PERRY, J., concur.