UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellee, v. JIFFY CAB COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—90—3545, 1—90—3590, 1—90—3591, 1—91—1661, 1—91—2186 cons.

Opinion filed June 30, 1994.

Larry Karchmar and Gary P. Stone, both of Larry Karchmar, Ltd., of Chicago, for appellants.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Patti M. Deuel, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

On April 2, 1988, Dwight Martin, who was driving a cab for Jiffy Cab Co. (Jiffy), and two passengers who were riding in his cab, Douglas Louden and Tony Anthony, got into an argument over the route Martin was taking to reach the passengers' designated destination. After the passengers exited the cab, an altercation ensued during the course of which Martin stabbed Louden. Louden died as a result of his wounds.

Rosalind Smith, individually and as special administrator of the estate Douglas Louden, together with Anthony filed a four-count complaint against Jiffy and Martin. The first count of that complaint was an action seeking recovery for the wrongful death of Louden. It alleged that "Martin maliciously assaulted, battered and stabbed" Louden for no apparent reason and that Louden died as the result of the wounds Martin inflicted. That count also provided that "said assault, battery and stabbing took place after Plaintiff, decedent exited the taxi cab in which he was a passenger." The second count was a survival action predicated on the same acts alleged in the first count.

The third count of the complaint alleged that Jiffy was negligent in its hiring of Martin. That count recited that Jiffy "[c]arelessly and negligently failed to adequately investigate, screen, or otherwise inquire into the background of cab drivers they hired for the express purpose of transporting the general public [to] areas around Chicagoland" and "[c]arelessly and negligently selected hired, and employed as cab drivers individuals they knew or through the exercise of reasonable care should have known were of a dangerous and violent nature or character, and unfit for the position sought to be filled."

In the fourth count of the complaint, Anthony sought recovery for emotional distress. That count stated that Martin's actions cre-

ated a "zone of danger" and that Martin chased Louden and Anthony with a knife after they exited the cab.

Jiffy sought coverage from its insurer, United States Fidelity & Guaranty Co. (USF&G or insurer), which defended the underlying action under a reservation of rights. USF&G then brought this declaratory judgment action seeking a declaration that the general automotive liability policy it issued to Jiffy did not provide coverage for the underlying action and that it did not owe Jiffy or Martin a duty to defend. In an order entered November 16, 1990, the trial court entered summary judgment in favor of USF&G, finding that the policy did not provide coverage because the underlying action was not one which "result[ed] from the ownership, maintenance or use of a covered auto."

After the trial court's grant of summary judgment, plaintiffs in the underlying action filed an amended complaint which added a fifth count. That count alleged that Martin "[c]arelessly and negligently began an altercation with the decedent and [Anthony]; ***[c]arelessly and negligently decided to use excessive force in his altercation; *** [and] [c]arelessly and negligently failed to listen to decedent and [Anthony] as to how he should reach their destination." That count deleted any reference to where the assault occurred.

USF&G then filed a supplemental motion for summary judgment seeking a declaration that its policy did not cover the added count V and that it did not owe Jiffy and Martin a duty to defend such action. On May 7, 1991, the trial court entered summary judgment in favor of USF&G pursuant to the supplemental motion, finding that count V of the underlying complaint was not covered by the policy in question. Jiffy, Martin, and the underlying plaintiffs appeal from the trial court's November 16, 1990, order and its order of May 7, 1991.

OPINION

On appeal, appellants contend that the adjudication of the declaratory judgment action was premature in that it was decided before any discovery was conducted in the underlying case. The appellants also contend that the trial court erred in determining that the insurance policy issued by USF&G did not provide coverage with respect to the underlying action.

●1 We first address appellants' contention that the adjudication of the insurer's declaratory judgment action was premature. It is well established that when an insurer is uncertain as to whether it should defend or refuse to defend, it can file a declaratory judgment action to determine its obligations and rights. (*Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742; see

also *State Farm Fire & Casualty Co. v. Hatherley* (1993), 250 Ill. App. 3d 333, 621 N.E.2d 39.) It has been held that a declaratory judgment action should not be decided prior to the adjudication of the underlying action where the issues to be decided in both actions are substantially similar. (*Bituminous Casualty Corp. v. Fulkerson* (1991), 212 Ill. App. 3d 556, 571 N.E.2d 256; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091; see also *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1989), 193 Ill. App. 3d 1087, 550 N.E.2d 1032, *aff'd* (1991), 144 Ill. 2d 64, 578 N.E.2d 926.) The rationale for this proscription is to prevent the declaratory action, through the subsequent application of the doctrine of collateral estoppel, from preempting the determination of the issues in the underlying tort litigation. (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 455, 430 N.E.2d 1079 ("the result of the declaratory judgment would be controlling in the underlying suit ***. [Citation.] Declaratory judgment would be only a forerunner of the accident trial, and would resolve nothing different").) As such, "a court in a declaratory judgment action may not determine whether the insured is actually liable nor may it determine any facts upon which the insured's liability is based." *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d at 336.

●2 An adjudication of a declaratory judgment action concerning coverage is not considered premature, however, "[w]here the issues in an underlying suit and a declaratory judgment action are separable [because] deciding the question of coverage in a collateral proceeding prejudices no party." (*Murphy*, 88 Ill. 2d at 455.) The case before us presents such a situation. The issue to be resolved in the coverage action is wholly separable from any of the issues involved in the underlying action. The sole issue to be resolved in the coverage action is whether the underlying claim resulted from the use, operation, or maintenance of a covered auto. The determination of that issue will not predetermine, through the application of the doctrine of collateral estoppel, the insured's liability in the underlying tort action.

On point is *Illinois State Medical Insurance Services, Inc. v. Cichon* (1994), 258 Ill. App. 3d 803, 629 N.E.2d 822. There the claimants contended that the trial court's determination in a declaratory judgment action that the insured had no duty to indemnify was premature as it should not have been made until the insured's medical malpractice had been established. The appellate court rejected this contention because "the issues [were not] substantially the same so that collateral estoppel would apply to control the resolution of issues in the underlying suit." (*Illinois State Medical Insur-*

*ance*, 258 Ill. App. 3d at 807, 629 N.E.2d at 825.) In so holding, the court noted that the issues raised in the coverage action, namely, whether the underlying claim fell within a policy exclusion, whether the insured was in breach of his duty to notify the insurer of certain facts as required by the policy, and whether the underlying claimants' psychological injuries came within the policies' coverage for personal injuries, did not control the outcome of the underlying litigation. Rather, the plaintiffs had to prove in the underlying action that the insured deviated from the standard of care and that his actions proximately caused the injuries in question. (*Illinois State Medical Insurance*, 258 Ill. App. 3d at 807, 629 N.E.2d at 825; accord *State Farm Fire & Casualty*, 250 Ill. App. 3d at 336 (rejecting contention that declaratory judgment action was premature; trial court's ruling in declaratory judgment action had no bearing on whether insured was liable for property damage or upon the facts upon which insureds' liability would be based).) Appellants' contentions that the trial court should have waited until discovery was completed in the underlying action is therefore not compelling. If discovery was necessary to determine the coverage issues before the court, that discovery could have been obtained in the coverage action itself without preempting the underlying tort action. The acceptance of the appellants' position would unwisely render all declaratory judgment actions which were decided prior to the completion of discovery in the underlying action premature.

We now turn to whether the policy issued by USF&G provides coverage in the underlying action. The automotive liability policy in question provides:

"We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto."

In construing this policy provision, we are mindful that insurance policies are to be liberally construed in favor of the insured and that all doubts and ambiguities must be resolved in favor of the insured. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 578 N.E.2d 926.) These general rules of construction favoring the insured, however, "must yield to the paramount rule of reasonable construction which guides all contract interpretations." (*Travelers Insurance Cos. v. P.C. Quote, Inc.* (1991), 211 Ill. App. 3d 719, 724, 570 N.E.2d 614.) Where the "language of an insurance policy is clear and unambiguous, it will be applied as written." *State Farm Fire & Casualty*, 250 Ill. App. 3d at 337.

Appellants argue that the underlying claims resulted from the

ownership, maintenance or use of a covered auto because Martin was performing his duties as a taxicab driver when he was transporting Louden and Anthony to a specific destination. They allege that the argument between Martin and the passengers ensued over the route which Martin was taking to reach that destination and that the altercation outside the cab flowed from the argument which began inside the cab. Citing the Florida decisions in *Allstate Insurance Co. v. Gillespie* (Fla. Dist. Ct. App. 1984), 455 So. 2d 617, and *Novak v. Government Employees Insurance Co.* (Fla. Dist. Ct. App. 1983), 424 So. 2d 178, *aff'd* (Fla. 1984), 453 So. 2d 1116, they argue that for automobile insurance coverage to apply, it is not necessary that the automobile become the instrumentality which causes the injury or that the type of conduct which caused the injury be that which is foreseeably identified with the normal use of the vehicle. Rather, there only need be a nexus between the automobile and the injury for the policy to provide coverage.

●3 While there are no cases directly on point in Illinois, the majority of the decisions throughout the country have rejected the position urged by appellants when construing general automotive liability policies with language virtually identical to that contained in the policy here. They have held that under facts similar to those in this case, involving altercations where an insured driver assaults another motorist or a passenger as a result of hostility generated through the operation of the vehicle, the use of the vehicle was too remote, incidental, or tenuous to support coverage under an automotive liability policy. (See 12 Couch on Insurance 2d § 45:78, at 319 (rev. ed. 1981) (and cases cited therein ("[w]hen the insured, through irritation or anger, strikes and injures another person, it has been held that such injury does not arise from the use of the insured automobile")).) We find these decisions to be persuasive. See, *e.g.*, *Stucky v. Long* (Okla. Ct. App. 1989), 783 P.2d 500 (causal connection between injuries suffered in fight after collision was too remote to invoke coverage under automotive liability policy); *Oweiss v. Erie Insurance Exchange* (1986), 67 Md. App. 712, 509 A.2d 711 (injuries suffered in physical altercation which grew out of disagreement concerning insurance information and who was at fault in minor traffic collision were not covered under terms of a general automotive liability policy as the injuries did not arise out of the use of an automobile); *Fowler v. State Farm Mutual Auto Insurance Co.* (Fla. Dist. Ct. App. 1989), 548 So. 2d 830 (insufficient connection between the insured's vehicle and the victim's injuries to effect coverage under automotive liability policy where the insured shot the victim while sitting in his car following a near collision between the victim's auto

and the insured's auto); *United Services Automobile Association v. Ledger* (1987), 189 Cal. App. 3d 779, 234 Cal. Rptr. 570 (insured's stabbing of another motorist who followed the insured for five miles to complain about a sudden lane change did not arise out of the ownership, maintenance, or use of a vehicle when stabbing occurred after both parties exited their vehicles).

We note that the Florida Supreme Court in *Race v. Nationwide Mutual Fire Insurance Co.* (Fla. 1989), 542 So. 2d 347, rejected coverage under an automotive liability policy for injuries which resulted when one driver assaulted another after a minor traffic collision. That decision was handed down by the Florida Supreme Court subsequent to the decisions in *Allstate Insurance Co. v. Gillespie* and *Government Employees Insurance Co. v. Novak*, the two Florida decisions upon which appellants rely. In *Race*, the court stated that "[t]he most that can be said is that the driving of the uninsured motorist which caused the accident created an atmosphere of hostility between the parties." (*Race*, 542 So. 2d at 351.) Likewise, here the dispute over the destination or route of the cab may well have created a hostile atmosphere between the parties. However, the mere creation of such an atmosphere is an insufficient causal connection upon which to predicate coverage under an automotive liability policy. See *Foss v. Cignarella* (1984), 196 N.J. Super. 378, 384, 482 A.2d 954, 957 (court determined that the insured's stabbing of the victim after a minor traffic collision did not arise out of the use, maintenance or ownership of an auto, noting the stabbing "did not originate from the use of the [insured] vehicle" and was not "connected with the inherent nature of the automobile); *Holm v. Mutual Service Casualty Insurance Co.* (Minn. 1977), 261 N.W.2d 598, 603 (court, after examining precedent from a number of jurisdictions, rejected the claim that the automotive liability section of a policy with language similar to that at issue here provided coverage for injuries inflicted during a tortious battery, concluding that "[i]n each of these decisions the acts of leaving the vehicles and inflicting a battery were viewed as events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted"); *National Mutual Casualty Co. v. Clark* (1942), 193 Miss. 27, 7 So. 2d 800 (cab driver's assault of passenger as passenger walked away from the cab, apparently because the cab driver was unsatisfied with the size of the tip he received, did not arise out of the use of an automobile).

Appellants point to the fact that a taxicab is considered a common carrier (*Anderson v. Yellow Cab Co.* (1975), 28 Ill. App. 3d 656, 329 N.E.2d 278), and, as such, it "has a special duty to its passengers to

take reasonable action to protect them against unreasonable risk of physical harm." (*Borus v. Yellow Cab Co.* (1977), 52 Ill. App. 3d 194, 200, 367 N.E.2d 277.) Appellants argue that this special duty extended to Louden and Anthony even after they exited the cab.

●4 We do not believe, however, that the taxicab company's status as a common carrier dictates a different result. The type of risk involved here, the battery of another driver or a passenger by the cab driver, is of an entirely different class than those risks which are protected by a general automobile liability policy. (See *A&G Associates, Inc. v. Michigan Mutual Insurance Co.* (1981), 110 Mich. App. 293, 312 N.W.2d 235 (holding in case involving cab driver's assault and robbery of passenger that the causal connection between the vehicle and the passenger's injuries was only incidental and that that type of injury was not "foreseeably identified" with the use of a vehicle); *Ledger,* 189 Cal. App. 3d at 785, 234 Cal. Rptr. at 572; accord *Lindsey v. Sturm* (Minn. App. 1989), 436 N.W.2d 788, 790 ("battery is not a foreseeable risk of motoring"); (*Hawkeye-Security Insurance Co. v. Gilbert* (1994), 124 Idaho 953, 866 P.2d 976 (discussing activities that are reasonably expected as normal incidents of the auto's operation)).) To expand the language of the policy beyond its plain meaning simply because a common carrier is involved, without requiring that the coverage language so specify, would unwisely equate the coverage afforded by the policy with the duty, and consequently the liability, of the common carrier, regardless of how remote the causal connection is between the covered automobile and the injuries which were suffered. See *Ulrich v. United Services Auto Association* (Wyo. 1992), 839 P.2d 942, 950, quoting *Worthington v. State* (Wyo. 1979), 598 P.2d 796, 809 (" 'The scope of coverage afforded by the type of insuring clause in question must end at some point, and this case represents a point well-beyond the line that must be reasonably drawn' ").

We also find that the claim for negligent hiring contained in the underlying complaint fails to invoke coverage for the same reason. In assessing whether insurance coverage for a claim of negligent hiring exists, courts will look to the acts of the individual who was hired in determining whether coverage exists. (*Louis Marsch, Inc. v. Pekin Insurance Co.* (1985), 140 Ill. App. 3d 1079, 491 N.E.2d 432; *Lopez v. New Mexico Public Schools Insurance Authority* (N.M. 1994), 870 P.2d 745.) If the acts of the employee would fail to invoke coverage or are excluded by a provision of the policy, the claim for negligent hiring of that employee will not be deemed to invoke coverage. *Louis Marsch,* 140 Ill. App. 3d at 1086; *Lopez,* 870 P.2d at 748.

●5 Here, we have already held that Martin's actions, from which

the underlying claims arise, do not provide a sufficient basis to support a determination that coverage is present. The injuries which resulted from Martin's actions did not result from the maintenance, ownership, or use of a covered auto and, as such, a claim for negligent hiring based upon those same acts cannot be considered to invoke coverage. See *Lopez*, 870 P.2d at 748 (denying coverage where the claim for negligent hiring against insured was based on the uninsured risk of sexual misconduct); see also *Terra Nova Insurance Co. v. Nanticoke Pines, Ltd.* (D. Del. 1990), 743 F. Supp. 293 (rejecting coverage based on claim of negligent hiring when that claim was predicated on the uninsured risk of employee's assault and complaint was clearly based entirely on assault).

●6 We note that the belated attempt of the underlying plaintiffs after summary judgment was already granted to add an additional count to the underlying complaint which deleted any reference to the place where the injury occurred does not permit a different result. We agree with the trial judge that the belated filing of the fifth count, after summary judgment was entered on the first four counts, should not be allowed to "mask the claims" which are set forth in counts I through IV. Count V does not purport to contradict counts I through IV with regard to where the altercation occurred, but merely remains silent with respect to that fact. Thus, the first four counts which explicitly place the occurrence outside of the cab still control as the place of the occurrence. *Badger Mutual Insurance Co. v. Murry* (1977), 54 Ill. App. 3d 459, 370 N.E.2d 295; see also *In re Marriage of O'Brien* (1993), 247 Ill. App. 3d 745, 617 N.E.2d 873.

Moreover, even if the pleadings expressly alleged that the assault occurred inside the cab, which they do not, it would not necessarily change the fact that the use of the auto was incidental and not sufficiently causative to support coverage. See *Western Casualty & Surety Co. v. Branon* (E.D. Ill. 1979), 463 F. Supp. 1208, 1212 (accidental shooting of one passenger by another passenger while both were riding in a van did not invoke coverage as the fact that the gun discharged inside the van was fortuitous and the discharge of the gun "had nothing to do with the inherent use of a van *** [nor was it] in any way causally] related or connected to the use of the van"); *Anderson v. Bennett* (Tenn. App. 1992), 834 S.W.2d 320 (coverage under automotive policy was not invoked by injuries inflicted when insured driver fired a gun from his vehicle at a group of children who had thrown a clump of dirt at his car); *Fowler*, 548 So. 2d at 833 (court determined that insured driver's shooting of another motorist after near collision did not have a sufficient relationship to the insured vehicle, even though insured was sitting in vehicle when shot was fired, so as to invoke coverage).

543

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

MURRAY, P.J., and COUSINS, J., concur.