Fifth Division

March 31, 1999

1-98-1524

STATE FARM MUTUAL AUTOMOBILE INSURANCE ) Appeal from the

COMPANY, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, )

)

v. ) 

) No. 97 CH 6942

STEVEN PFIEL, ROGER PFIEL, GAYLE PFIEL, )

and MARSHA NORSKOG, Individually and as )

Special Administrator of the Estate of )

HILLARY NORSKOG, deceased, ) Honorable

) Ronald C. Riley,

Defendants-Appellants. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

State Farm Mutual Automobile Insurance Company (State Farm) sought a judicial declaration of its obligation to defend its insured, Gayle Pfiel (Gayle), in a tort action brought by Marsha Norskog (Marsha), individually, and as special administrator of her daughter Hillary Norskog's (Hillary) estate.  In that still pending suit, Marsha claims that Steven Pfiel (Steven), Gayle's son, stabbed and killed Hillary while inside Gayle's automobile.  The circuit court granted State Farm's motion for summary judgment, finding that Gayle's automobile policy afforded no coverage for the acts alleged in the underlying tort complaint.  
Marsha contends that the court erred in (1) refusing to stay the declaratory judgment action until the resolution of her tort claim; and (2) finding that State Farm had no duty to defend pursuant to the general automobile policy issued to Gayle.

On July 14, 1993, while seated inside his mother's Chevrolet Cavalier parked in a forest preserve, 17-year-old Steven stabbed to death 13-year-old Hillary with a hunting knife given to him by his parents.  He then drove to another area of the forest preserve where he left Hillary's body, which was discovered several days later.  Steven subsequently was charged with Hillary's murder.  

Marsha filed suit against Steven for wrongful death, assault and infliction of emotional distress.  She also sought damages from Gayle and her husband, Roger Pfiel (Roger), for their negligent supervision of Steven and their negligent entrustment of the hunting knife and automobile to him.  The underlying complaint alleged that Gayle's automobile, when placed in Steven's unrestricted and unsupervised possession, was a dangerous instrumentality which ultimately was used to facilitate Hillary's murder.  The complaint further alleged that Steven used that vehicle to transport drugs and alcohol on the day of Hillary's murder, and that he planned the murder and used the vehicle's interior space as a "trap" to confine Hillary during the attack, to muffle her screams and to transport her body to a hidden location to avoid detection.  The underlying complaint alleged that, at the time Gayle and Roger entrusted the vehicle to Steven, it was reasonably foreseeable that Steven would use the vehicle to harm others, given his alleged violent and aggressive behavior.
(footnote: 1) 

Gayle and Roger tendered their defense to State Farm, the insurer of Gayle's vehicle.  The insurance policy covering the automobile provided, 
inter alia
, that State Farm would

"1. pay damages which an 
insured
 
becomes legally liable to pay because of:

    

a.  
bodily injury
 to others, and 

b.  damage to or destruction of property 

    including loss of its use, 

caused by accident resulting from the ownership, maintenance or use of 
your car
; and

2.  defend any suit against an 
insured
 for such damages ***."  (Emphasis in original.)

State Farm thereafter sought judgment declaring that the general automobile policy it had issued to Gayle provided no coverage for the allegations contained in the underlying complaint and, therefore, it did not owe Roger, Gayle or Steven any duty to defend.  For support, State Farm argued that the "bodily injury" to Hillary did not arise from "the ownership, maintenance or use" of Gayle's vehicle as anticipated by coverage language in the policy.  The circuit court entered summary judgment in favor of State Farm, finding that the policy provided no coverage because the alleged damages did not result from the ownership, maintenance or use of the covered automobile.  Marsha appeals.

I

Marsha initially asserts that the circuit court's consideration of State Farm's declaratory judgment action was premature.  She contends that the court should have waited until the resolution of her tort case to determine whether coverage applied.  State Farm responds that the court decided no issues material to the underlying tort case and, therefore, its review of the declaratory judgment action was appropriate.

An insurer's duty to defend its insured in a lawsuit hinges upon a liberal reading of the complaint; the insurer is, therefore, duty bound to defend its insured whenever conduct alleged is potentially within policy coverage, even where the insurance company discovers that the allegations are groundless, false, or fraudulent.  
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 355 N.E.2d 24 (1976).  Only if it is apparent on the face of the allegations contained in the complaint that the claim is beyond the policy's coverage limits can the insurer conclude that it has no duty to defend.  
State Farm Fire & Casualty Co. v. Shelton
, 176 Ill. App. 3d 858, 862, 531 N.E.2d 913 (1988).  When a court is asked to determine whether an insured's conduct is covered under a policy, it must not determine disputed issues of fact which form the basis for the insured's liability in the underlying tort action (
Peppers
, 64 Ill. 2d at 197; 
State Farm Fire & Casualty Co. v. Leverton
, 289 Ill. App. 3d 855, 856-57, 683 N.E.2d 476 (1997)); declaratory judgments prior to resolution of the underlying tort action might resolve issues crucial to the insured's liability in an ancillary proceeding.  
Allstate Insurance Co. v. Carioto
, 194 Ill. App. 3d 767, 774, 551 N.E.2d 382 (1990).  Accordingly, where 
bona fide
 controversies arise over the issue of negligence versus intentional conduct, declaratory judgment actions are premature until resolution of that question in the underlying tort case.  
Carioto
, 194 Ill. App. 3d at 774.

The construction of the automobile policy's coverage language in the instant case, however, is an issue of law independent of the ultimate issues to be resolved in Marsha's tort case.  The declaratory judgment action did not improperly resolve contested issues in the tort litigation; rather, the circuit court determined, as a matter of law, that the facts as alleged in the underlying complaint did not invoke the coverage provisions in Gayle's automobile policy.  The question of whether Hillary's death was due to an "accident" caused by Gayle's negligent "ownership" or caused by Steven's "use" of the vehicle is one of policy construction, not crucial to the determination of liability in the underlying tort action.  See 
United States Fidelity & Guaranty Co. v. Jiffy Cab Co.
, 265 Ill. App. 3d 533, 537, 637 N.E.2d 1167 (1994) (
Jiffy Cab
) ("The issue to be resolved in the coverage action is wholly separable from any of the issues involved in the underlying action.  The sole issue to be resolved in the coverage action is whether the underlying claim resulted from the use, operation, or maintenance of a covered auto.")  Accordingly, the court did not consider State Farm's declaratory judgment complaint prematurely.   II

Marsha next identifies error in the circuit court's determination that State Farm had no duty to defend the Pfiels, insisting that the conduct alleged in her complaint is covered by State Farm's policy.  State Farm responds that Steven's "use" of the automobile--the transportation of drugs and alcohol, the confinement and stabbing of Hillary while inside the automobile, and the removal of her body from the scene of the stabbing--were not "uses" of the vehicle within the scope of coverage.

The construction of an insurance policy and the determination of the rights and obligations of the parties to that policy are questions of law which are subject to 
de novo
 review.  
Pekin Insurance Co. v. L.J. Shaw & Co.
, 291 Ill. App. 3d 888, 891, 684 N.E.2d 853 (1997).  Insurance policies will be liberally construed in favor of the insured and all doubts and ambiguities will be resolved in favor of the insured.  
Jiffy Cab
, 265 Ill. App. 3d at 538.  A duty to defend arises where a complaint alleges a cause of action within or potentially within the coverage of an insured's policy.  In construing an insurance policy, a court's primary function is to ascertain and enforce the intentions of the parties as expressed in the agreement.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).  Whether an insurer's duty to defend exists is determined by analyzing the allegations in the underlying complaint with the policy provisions as frames of reference.  
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 532, 655 N.E.2d 842 (1995).

In the instant case, the policy in question afforded coverage and required State Farm to defend and indemnify Gayle in situations where she became "legally liable" because of "bodily injury to others *** caused by accident resulting from the ownership, maintenance or use of" her automobile.  The underlying complaint at issue alleged that Gayle was negligent in Steven's supervision and in entrusting her vehicle to him.  The complaint further alleged that Hillary's injuries and death were "direct[ly] and proximate[ly]" caused by "Roger Pfiel and Gayle Pfiel's actions in entrusting [the knife and automobile] to Steven Pfiel" in that "[t]he murder vehicle provided him with the opportunity to travel to a remote area, to use the vehicle's confined space from which escape by his victim was difficult and which limited the likelihood of being seen or heard by others during the assault, and to facilitate his efforts to avoid detection by hiding the body until he could dump it."

Marsha urges that her claim resulted from the ownership, maintenance or use of the insured automobile because Gayle negligently provided Steven unsupervised and unrestricted use of it without which Hillary's murder would not have occurred, when Gayle knew, or should have known, that he would use the vehicle to harm another; therefore, Marsha claims, Hillary's injuries and death resulted from the "ownership" and "use" of the vehicle.  She insists that "[i]n simple terms, State Farm has expressly provided for coverage when a negligent act of ownership leads to someone getting hurt 
by the insured vehicle."

A causal relation or nexus must exist, however, between the accident or injury and the ownership, use or maintenance of the vehicle in order for the accident or injury to come within the policy coverage; where such nexus or connection is absent, coverage is denied.  
Jiffy Cab
, 265 Ill. App. 3d at 540 (although a dispute over the destination or route of a taxi cab, resulting in a stabbing outside the taxi cab, "may well have created a hostile atmosphere between the parties[,] the mere creation of such an atmosphere is an insufficient causal connection upon which to predicate coverage under an automobile liability policy")
.  See also 
Laycock v. American Family Mutual Insurance Co.
, 289 Ill. App. 3d 264, 682 N.E.2d 382 (1997); 
Aryainejad v. Economy Fire & Casualty Co.
, 278 Ill. App. 3d 1049, 663 N.E.2d 1107 (1996) (
Aryainejad
).  The resolution of this issue must be obtained by determining whether the alleged use of the vehicle is reasonably consistent with the inherent nature of the vehicle.  See, 
e.g.
, 
Doe v. State Farm Fire & Casualty Co.
, 878 F. Supp. 862 (E.D. Va. 1995) (when abductor pushed insured's head against interior automobile window, the injuries were somewhat causally connected to the automobile, but were not connected to use of the automobile as an automobile); 
United Services Automobile Association v. Aetna Casualty & Surety Co.
, 75 A.D.2d 1022, 429 N.Y.S.2d 508 (1980) (the "accident" causing injury, occurring inside the vehicle, must be connected with the use of an automobile 
qua
 automobile);  
Allstate Insurance Co. v. Furo
, 588 So. 2d 61 (Fla. 1991) (passenger shot in vehicle was not entitled to insurance recovery because injury did not result from "use of motor vehicle" and vehicle was mere situs of injury and not cause of it).

In the case 
sub
 
judice
, the circuit court properly found that State Farm's policy does not cover the conduct alleged in the underlying tort complaint because the manner in which Steven "used" the vehicle to injure Hillary was attenuated from the actual legitimate purpose of an automobile and, therefore, not contemplated by the parties to the insurance contract.  See 
Aryainejad
, 278 Ill. App. 3d at 1054 (affording coverage where the injuries resulted from an activity that is within the risk reasonably contemplated by the parties).  Here, 
liability arose from nonvehicular conduct and existed independent of the "use" or "ownership" of the vehicle; the actual involvement of Gayle's vehicle was incidental to the injuries sustained by Hillary.  Although Marsha asserts that, but for Gayle's negligent entrustment of the vehicle to Steven, the attack would not have occurred, the causal connection between the injury sustained and the ownership or use of the automobile must be more than incidental or fortuitous; the injury must be reasonably identifiable with the normal ownership, maintenance or use of the vehicle.  See, 
e.g.
, 
Hawkeye-

Security Insurance Co. v. Gilbert
, 124 Idaho 953, 866 P.2d 976 (1994).

To construe the occurrence of the tragic violence inside Gayle's automobile as being related to any reasonably contemplated use of the vehicle would extend the insurance coverage beyond the bounds of reason.
  "Automobiles are an indispensable part of many crimes, bank robberies for example, yet it would most certainly be farfetched to say that these crimes result from the 
use
 of the automobile." (Emphasis in original.)  
Aetna Casualty & Surety Co. v. United States Fidelity & Guaranty Co.
, 806 F.2d 302, 303 (1st Cir. 1986).  The dominant principle to be utilized in interpreting and construing any insurance contract is to ascertain and effectuate the intention of the contracting parties.  
Bituminous Casualty Corp. v. North River Insurance Co.
, 46 Ill. App. 3d 654, 361 N.E.2d 60 (1977).  "Automobile insurance spreads the risk of damages from automobile accidents among the insured population.  The limitation on liability to damages 'resulting from the ownership, maintenance or use of a covered auto' ensures that the risk spread is the risk of 
automobile
 accidents, and not all accidents, or more accurately, incidents, to which an automobile can be tied, however remotely."  (Emphasis in original.)  
Aetna Casualty & Surety Co.
, 806 F.2d at 303.

Marsha nevertheless argues that "State Farm has a duty to defend in this case because the damages in the underlying tort case should have been contemplated by State Farm as they arise out of the negligent act of an insured who owned a vehicle insured by State Farm, and State Farm issues its policies for the express purpose of protecting an insured against liability for negligent acts."  State Farm did not issue a policy which insured against liability for 
all
 negligent acts, however; the policy limited its coverage to liability arising from "
accident resulting from the ownership, maintenance or use of
" the covered vehicle.  Whether or not a vehicle creates a condition that leads to an assault, as the above-cited authorities suggest, injuries resulting from an assault within the vehicle are not a normal or reasonable consequence of the use or ownership of a vehicle.  Physical altercations are not reasonably consistent with the inherent nature of the vehicle; they are not, therefore, risks which the parties to automobile insurance policies reasonably would contemplate.  See 
Aryainejad
, 278 Ill. App. 3d at 1054-55.  

The circuit court properly found that the facts alleged in Marsha's complaint do not fall even potentially within the scope of insurance coverage provided by the general automobile policy issued to Gayle and State Farm has no duty to defend.  See 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 398, 620 N.E.2d 1073 (1993).  Accordingly, the judgment of the court is affirmed.

Affirmed.

GREIMAN and THEIS, JJ., concur.

FOOTNOTES
1:
The underlying complaint alleged that Gayle and Roger were aware, or should have been aware, of numerous incidents involving Steven's dangerously violent and aggressive behavior, beginning at the age of eight and including a clinical psychiatric diagnosis of a chemical imbalance for which Steven was prescribed medication.  Specifically, the complaint alleged that Gayle and Roger knew or should have known that Steven had been "assaulting and battering human beings regularly" since the age of eight, had assaulted another child with an axe, had dropped bricks off an overpass onto traffic below, had repeatedly made death threats to another child, had committed numerous criminal acts of violence and property damage and was a chronic alcohol and drug abuser.  The complaint further alleged that Gayle and Roger had, or should have had, knowledge that Steven used Gayle's vehicle to run over and kill animals and to drive recklessly.