# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*American Country Insurance Co. v. Chicago Carriage Cab Corp.*,
**2012 IL App (1st) 110761**

---

| | |
|---|---|
| Appellate Court Caption | AMERICAN COUNTRY INSURANCE COMPANY, Plaintiff-Appellee, v. CHICAGO CARRIAGE CAB CORPORATION, AKINWUMI WILLIAMS, CHICAGO ELITE CAB CORPORATION, and STEVE COX, Defendants-Appellants (Akinwumi Williams, Third-Party Plaintiff-Appellant; Hail Hacking Corporation, Third-Party Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-11-0761, 1-11-0833 cons. |
| Filed | August 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The insurer of a taxi company had no duty to indemnify a passenger who hailed an insured taxi only to have the driver stop the cab and assist a third person in robbing and battering the passenger, since the passenger's injuries "did not arise out of the ownership, maintenance, or use of an auto," as provided by the policy at issue. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-7807; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Richard L. Berdelle, Jr., of Richard L. Berdelle, Jr., P.C., of Chicago, for appellants. |
|---|---|
| | Law Offices of Maxwell H. Brusky, of Batavia, for appellees. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion. |
| | Justices Lampkin and Palmer concurred in the judgment and opinion. |

## OPINION

¶ 1    The trial court granted summary judgment in favor of plaintiff American Country Insurance Company in its action seeking a declaration that it had no duty to indemnify the passenger of an insured taxi for injuries sustained in the course of a robbery. In a previous tort suit, where the report of proceedings was included in the record of this proceeding, Steve Cox, the taxi passenger and one of the defendants in this declaratory action, testified that he gave the taxi driver directions to his destination, only to observe the driver ignore the directions and turn the wrong way down a one-way street. The driver stopped the taxi and a masked man entered, robbing and battering Cox with the participation of the driver.

¶ 2    Cox filed a tort complaint against Akinwumi Williams, the lessee of the taxi and a co-defendant in this action, which alleges that the driver was Williams's friend, to whom Williams had loaned the taxi and who had no drivers license. The jury found Williams liable for negligent entrustment and awarded Cox damages. Hail Hacking Corp., the third-party defendant in this case, owned the medallion to the taxi and was the direct insured of the American Country policy. Williams filed a third-party complaint against Hail Hacking, arguing that, should the insurer deny coverage or pay less than the judgment entered in the underlying tort action, Hail Hacking should pay any portion of the judgment not satisfied by the insurer because the lease agreement required Hail Hacking to obtain liability insurance coverage to the lessee of the taxi. The trial court granted summary judgment to American Country and dismissed Williams's third-party complaint against Hail Hacking for failure to state a cause of action. Both Williams and Cox appeal. We affirm.

¶ 3                                                    BACKGROUND

¶ 4    This litigation involved a taxi driven by Kingsley Njemanze (Kingsley). The taxi held medallion number 4855 and was leased to the defendant/third-party plaintiff, Akinwumi Williams, by Chicago Carriage Corporation and Chicago Elite Cab Corporation, additional codefendants in the declaratory action. Williams allowed Kingsley to drive the taxi on the night in question. Hail Hacking Corporation, the third-party defendant, held the license and medallion for the taxi, and procured the insurance policy covering the taxi from the plaintiff,

American Country Insurance Company.

¶ 5 Steve Cox's claims for assault and battery and negligent entrustment against Williams proceeded to a jury trial. Before the jury, Cox testified that on December 29, 2005, at approximately 2 a.m., he hailed a taxi at the corner of Randolph and Halsted Streets in Chicago. Cox described the vehicle as a maroon Ford Crown Victoria with its taxi dome illuminated. The taxi contained license and registration for a driver, along with a photograph. Cox instructed the driver to proceed north on Halsted to Milwaukee Avenue. Cox could hear the driver talking on a cell phone in a foreign language. Inexplicably, the driver turned the wrong way down Wayman Street, approximately three blocks before reaching Milwaukee Avenue. After turning down Wayman, the driver stopped the taxi in an intersecting alley. When the driver stopped the taxi, Cox spoke to the driver, but the driver did not respond. A moment later, a man wearing a ski mask entered the backseat of the taxi with Cox and stated, "This is a robbery." Cox began struggling with the masked man in the backseat of the vehicle.

¶ 6 Following the crime, Cox identified Williams from a photo lineup as having some involvement in the incident. Cox explained that he "recognized him from the night of the incident." He recognized Williams from the taxi license photo and testified he believed the masked robber was Williams based on the same build and complexion. Cox identified Kingsley in an in-person lineup as the taxi driver on the night of the robbery and assault. Cox identified the taxi as cab number 4855.

¶ 7 Williams testified that on December 29, 2005, he held a chauffeur's license. He had been driving a taxi for Chicago Carriage Cab Company since 2003. Williams testified that he leased a taxi on a weekly basis. He signed a lease from December 24, 2005, to December 31, 2005, for cab number 4855, a maroon Ford Crown Victoria. Williams testified he knew that, pursuant to both the lease and his chauffeur's license, he was the only one lawfully permitted to operate the taxi.

¶ 8 Williams testified that he nevertheless let his friend Kingsley drive the taxi during the lease period. Williams drove during the day, from 6 a.m. to 6 p.m., and allowed Kingsley to drive at night in exchange for $200 per week. Williams knew that Kingsley's driver's license was suspended. Williams left his photo and license posted in the taxi when Kingsley drove it, intending for passengers to think that someone with a valid license was driving. Williams testified that Kingsley drove the taxi on the night of the incident. Williams testified that he was not involved in the robbery of Cox; that he was at home when it occurred.

¶ 9 Detective Jody Longos, a Chicago police detective, testified and confirmed that Cox identified Williams and Kingsley in separate lineups. After Cox was unable to serve Kingsley with the tort complaint, Kingsley was dismissed as a defendant in the underlying lawsuit and is not involved in this appeal.

¶ 10 At the close of all the evidence in the jury trial, the trial court entered directed verdicts in favor of the two cab companies. At the jury instructions conference, with Williams as the only remaining defendant, Cox and Williams disagreed on how the jury should be instructed. The claim in count I was labeled "Negligence," but alleged that Cox was assaulted, battered, and robbed in the rear of the taxi and on the street by an unknown person in a ski mask or

Williams in a ski mask, and others. The claim in count II was labeled "Negligent Entrustment," and alleged that Williams knew or should have known that Kingley's license was invalid and that he would use the taxi in a manner that exposed others to unreasonable risks. The disagreement over the instructions concerned count I. Williams claimed it asserted an intentional tort or willful and wanton conduct. Cox argued that it alleged negligence. The trial court determined that negligence instructions on count I were appropriate. The jury was instructed as follows:

"The plaintiff claims that he was injured and sustained damage and defendant[ ] [was] negligent in one or more of the following respects: (A) failed to exercise the highest degree of care to protect his passengers from the danger of injury from assault of which he knew or should have anticipated from the facts and circumstances known to [him] by the passenger was traveling and alighting from the taxicab; (B) failed to exercise the highest degree of care to protect his passenger from assault, abuse, or intentional harm to [him] by an employee of the carrier then on duty; (C) failed to exercise the highest degree of care in selecting a place for the plaintiff to alight consistent with the mode of conveyance ***; (D) knew or should have known that alighting plaintiff in the aforementioned area would place him in danger of being injured; (E) knew or should have known that Kingsley was to use Chicago Carriage Cab no. 4855 in a manner involving unreasonable risk of physical harm to others; and (F) knew or should have known that Kingsley was unfit to operate Chicago Carriage Cab no. 4855 was [*sic*] incompetent, inexperienced, unqualified, and reckless. The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries."

¶ 11    The court instructed the jury on negligent entrustment in count II as follows:

"In Count II, Steve Cox seeks to recover damages from the defendant, Mr. Williams, for negligent entrustment. In order to recover damages, the plaintiff has the burden of proving, first, that Kingsley was incompetent, inexperienced, or reckless driver; second, that Mr. Williams knew or should have known that Kingsley was incompetent, inexperienced, or reckless driver; third, that Mr. Williams entrusted his vehicle to Kingsley; and fourth, that the plaintiff was injured; and fifth, that the incompetency, inexperience, or recklessness of Kingsley as a driver was a proximate cause of plaintiff's injury."

¶ 12    The jury returned a verdict in favor of Williams on count I and against Williams on count II. It awarded Cox $275,585.08 in damages. On May 18, 2010, the court denied Williams's posttrial motion for judgment notwithstanding the verdict. Williams did not appeal.

¶ 13    On February 23, 2010, American Country filed its declaratory judgment action to absolve it of any obligation to pay the damages the jury awarded to Cox. American Country alleges that the injuries Cox sustained were not covered by the policy issued to Hail Hacking, which covered Williams as lessee of the taxi as well. The complaint asserted five counts, only one of which is pertinent to the appeal before us. Count III asserted American Country owed no duty to indemnify Williams because the injuries to Cox "did not arise out of the ownership maintenance or use of an auto," as provided by its policy. We set out the controlling provision:

"Section II–LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'

We have the right and duty to defend any 'insured' against a 'suit' asking for such damages. However, we have no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

¶ 14　Williams and Cox each filed an answer to the declaratory action complaint denying that American Country owed no duty to indemnify. American Country moved for summary judgment on count III of its complaint. Williams and Cox filed responses opposing it. After hearing oral argument, the trial court found no questions of material fact arose under the policy. It granted summary judgment to American Country, finding it had no duty under its policy to indemnify Williams as lessee.

¶ 15　Williams also filed a third-party complaint against Hail Hacking, alleging that if the policy it procured from American Country did not indemnify Williams for the negligence-based judgment entered in favor of Cox, then Hail Hacking breached its lease contract with Williams to provide comprehensive insurance coverage for the leased taxi. Williams's third-party complaint was consolidated with the declaratory judgment action. The trial court dismissed Williams's third-party complaint for failure to state a cause of action against Hail Hacking. Williams appeals both judgments. Cox appeals the grant of summary judgment in favor of American Country.

¶ 16　　　　　　　　　　　　　　　ANALYSIS

¶ 17　Cox argues that a material question of fact exists regarding whether his injuries arose out of the ordinary use of the taxi as covered by the American Country policy. Alternatively, Cox and Williams both argue that the facts show that Kingsley was negligent in allowing Cox to be attacked and therefore American Country was not entitled to summary judgment. In the alternative, Williams argues that the Chicago Municipal Code (the Code) requires insurance coverage broader than the coverage provided by the policy at issue in this case and, therefore, the policy here should be read more broadly to conform to the Code, which would trigger coverage for the damages sustained by Cox. Chicago Municipal Code § 9-112-220 (amended July 12, 1990). With regard to the third-party claim, Williams argues that Hail Hacking failed to obtain a policy that conformed with the requirements of the Code and consequently breached the lease contract, which should make Hail Hacking responsible for the judgment won by Cox.

¶ 18　　　　　　　　　　　　　　I. Jurisdiction

¶ 19　We first note the trial court's order did not address all the claims raised in the parties' motions pending before it, which compels a review of our jurisdiction to decide this appeal.

American Country filed its complaint seeking declaratory judgment that it owed no duty to indemnify Williams for the damages awarded to Cox. The complaint asserted five counts, with counts I, II, and IV voluntarily dismissed before the circuit court. The trial court granted summary judgment to American Country on count III, which alleges it owed no duty to indemnify Williams under the terms of the policy. Count V alleges that, in the event it had a duty to indemnify Williams, Williams relieved American Country of that duty when Williams failed to provide timely notice of Cox's claims.

¶ 20  As we detailed above, Williams filed an answer and counterclaim. The counterclaim asserted three counts. Count I alleges American Country breached the insurance contract by its refusal to indemnify Williams. Count II alleges a violation of the Illinois Insurance Code (215 ILCS 5/155 (West 2006)), based on the same refusal of American Country to pay the judgment. Count III alleges American Country acted in bad faith by not offering to settle with Cox within the policy limit of $350,000. All three counts sought an order compelling American Country to pay the judgment Cox won against Williams and to reimburse Williams for his attorney fees. Later, Williams filed his third-party complaint against Hail Hacking, alleging that Hail Hacking should pay the judgment in the event American Country is not ordered to do so. The trial court granted summary judgment to American Country on count III of its declaratory judgment action and dismissed Williams's third-party complaint against Hail Hacking. Left undecided were the counterclaim Williams filed against American Country and count V of American Country's complaint. We must determine whether these unresolved issues defeat our jurisdiction.

¶ 21  We have jurisdiction to review only orders that are "final and appealable." *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *R.W. Dunteman*, 181 Ill. 2d at 159. Whether an order disposing of fewer than all claims pending is appealable is controlled by Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006). "[A]n appeal may be taken from a final judgment as to one or more but fewer than all *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006). A claim is "any right, liability or matter raised in an action." *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465 (1990). In the context of summary judgment, a dismissal order that does not dispose of all claims can be appealed if " 'the order granting summary judgment *** necessarily entailed the disposition of the issues raised in the counterclaim as well.' " *1350 Lake Shore Associates v. Casalino*, 352 Ill. App. 3d 1027, 1034 (2004) (quoting *Lynch Imports, Ltd. v. Frey*, 200 Ill. App. 3d 781, 785 (1990)). In such a case, a court of review has jurisdiction even without Rule 304(a) language. *1350 Lake Shore Associates*, 352 Ill. App. 3d at 1034 (citing *Lynch Imports, Ltd.*, 200 Ill. App. 3d at 785).

¶ 22  In this case, the trial court's order did not include Rule 304(a) language but its grant of summary judgment to American Country necessarily disposed of all the issues raised in count V of its declaratory judgment complaint and Williams's counterclaim. *1350 Lake Shore Associates*, 352 Ill. App. 3d at 1034 (citing *Lynch Imports, Ltd.*, 200 Ill. App. 3d at 785). American Country's complaint alleges that it was not obligated to indemnify Williams for

several reasons. Williams's counterclaim alleges that American Country was obligated to indemnify him, again for several reasons. Although each pleading gave several bases for its claims, each pleading focused on only one remedy: the duty to indemnify. When the trial court ruled American Country owed no duty to indemnify as alleged in count III of its declaratory action complaint, the court necessarily decided the indemnification *in toto*. The other relief sought by Williams in his counterclaim of attorney fees was inextricably tied to the declaratory judgment action. American Country owed no attorney fees once it was absolved of a duty to indemnify. Though not all counts of pending pleadings were ruled upon, the grant of summary judgment to American Country on count III of its declaratory judgment complaint necessarily entailed the disposition of all issues raised in the two pleadings. As a consequence, we have jurisdiction to decide this appeal.

¶ 23                                II. Summary Judgment

¶ 24    Turning to the substantive arguments, Cox argues that material questions of fact remain to render the grant of summary judgment to American Country erroneous. According to Williams and Cox, the jury's verdict finding Williams not liable for the assault and battery means that Williams's liability rests solely on his negligent conduct that gave rise to the injuries sustained by Cox. They contend the jury's finding of liability on negligent entrustment means the occurrence was accidental in nature. To rebut this contention, American Country points to the trial testimony that showed Kingsley was involved in the attack. American Country contends the jury's verdict should not be considered in deciding whether it was entitled to summary judgment. In any event, it argues that Kingsley was undeniably involved in the robbery and assault of Cox and his use of the taxi to commit the crimes falls outside the ordinary use of an automobile, which bars coverage.

¶ 25    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). In ruling on a summary judgment motion, a circuit court determines whether issues of fact exist; it does not make factual determinations. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). In determining whether a question of fact exists, "a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Williams*, 228 Ill. 2d at 417. Summary judgment is "a drastic means of disposing of litigation" and thus should only be awarded when the moving party's right to judgment as a matter of law is "clear and free from doubt." *Williams*, 228 Ill. 2d at 417. We review grants of summary judgment *de novo*. *Williams*, 228 Ill. 2d at 417. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 26    Coverage under the American Country policy applies if the damages were "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " Generally, the negligent entrustment of a cab involves the "use of a covered auto" as provided by the policy. The salient question is whether what happened to Cox that commenced with the use of the taxi qualifies as an "accident" under the terms of the policy.

-7-

The circuit court's decision did not address this question; nor do the briefs of the parties shed much light on this.

¶ 27    We keep in mind that Williams is the additional insured to Hacking Hail under the American Country policy. To state the obvious, Kingsley, the driver, is not seeking liability coverage under the policy. American Country's argument of no duty to indemnify must be based on the entire nature of the events that occurred. Williams's involvement may be an unresolved question of fact but Cox's involvement is not.

¶ 28    Rather than address Williams's involvement in the robbery and assault, the opposing sides focus on Kingsley's involvement. American Country maintains that Kingsley was an active participant in the robbery. Cox and Williams maintain in this case that Kingsley was an uninvolved driver who merely made a mistake in stopping the taxi in an unsafe location. American Country discusses whether using a taxi as an instrument to perpetrate a crime is "use of a covered auto." On the other hand, Cox and Williams discuss whether the negligent act of stopping in an unsafe area constitutes a "use of a covered auto." We think both arguments miss the mark. It is what happened to Cox that is dispositive. Williams's role cannot be ascertained on the record before us. We cannot simply substitute Williams for Kingsley and conclude that Williams had a role in the robbery and assault because no other conclusion can be drawn than Kingsley helped perpetrate the crimes based on Cox's version of events. Williams denied any involvement; his contention is that at worst he negligently entrusted the taxi to Kingsley.

¶ 29    The question we are confronted with is whether mere proof by Cox that a crime was committed with the "use of a covered auto" as a taxi should be resolved as a matter of law to preclude coverage to one of the policy's insureds found negligently responsible for the damages suffered by the taxi passenger or whether the answer to that question should be resolved by a trier of fact.

¶ 30    All parties cite three cases in which assaults arose out of incidents involving automobiles. All three cases held that when criminal acts occurred that were related to an auto but outside the realm of typical use of an auto, there was no coverage. *SCR Medical Transportation Services, Inc. v. Browne*, 335 Ill. App. 3d 585 (2002); *State Farm Mutual Automobile Insurance Co. v. Pfiel*, 304 Ill. App. 3d 831, 836-37 (1999); *United States Fidelity & Guaranty Co. v. Jiffy Cab Co.*, 265 Ill. App. 3d 533 (1994). Each case involved language identical to the policy at issue here.

¶ 31    In *SCR*, driver Britton, an employee, was accused of sexual assault. The court concluded: "In similar cases where injuries were caused by criminal assaults in and about a vehicle, but were not caused by the vehicle itself, courts have held the injuries did not arise out of the operation, maintenance, or 'use' of a vehicle and were not covered under an automobile insurance policy." *SCR*, 335 Ill. App. 3d at 588.

¶ 32    "A causal connection or nexus must exist between the accident or injury and the ownership, use, or maintenance of the vehicle in order for the accident or injury to come within the policy coverage." *SCR*, 335 Ill. App. 3d at 589. "The mere fact that a vehicle is the site of an injury or incident is insufficient to create a connection between the 'use' of the vehicle and the injury so as to bring the injury within policy coverage." *SCR*, 335 Ill. App.

3d at 589. "[T]ort liability on the part of the insured establishes contractual liability on the part of the insurer only where the policy affords coverage, and that determination is subject to the rules of contract construction, and not tort principles." (Internal quotation marks omitted.) *SCR*, 335 Ill. App. 3d at 590. "Our analysis is concerned solely with whether the insurance policy at issue provides coverage for SCR in defending the underlying lawsuit. We do not look to negligence cases in assessing Empire's duty to defend. Rather, we look only at the relevant insurance policy provisions and compare them to the allegations in the underlying complaint." *SCR*, 335 Ill. App. 3d at 590. "In a declaratory judgment action, the construction of an automobile insurance policy's language is an issue of law, independent of the ultimate issues to be resolved in the underlying tort action." *SCR*, 335 Ill. App. 3d at 591.

¶ 33    In *Pfiel*, the court held that injuries from a negligent entrustment claim were not covered by the policy. *Pfiel*, 304 Ill. App. 3d at 836-37. A teenager borrowed his parents' van, murdered a young girl inside, and drove to a desolate area to dispose of her body. *Pfiel*, 304 Ill. App. 3d at 832-33. The girl's mother filed a claim against the parents for negligent entrustment. *Pfiel*, 304 Ill. App. 3d at 832. Because the child's criminal actions were not "consistent with the inherent nature of the vehicle," no causal nexus existed between the typical use of a vehicle and the injuries. *Pfiel*, 304 Ill. App. 3d at 836. " 'Automobiles are an indispensable part of many crimes, bank robberies for example, yet it would most certainly be farfetched to say that these crimes result from the *use* of the automobile.' " (Emphasis in original.) *Pfiel*, 304 Ill. App. 3d at 837 (quoting *Aetna Casualty & Surety Co. v. United States Fidelity & Guaranty Co.*, 806 F.2d 302, 303 (1st Cir. 1986)). "[T]he manner in which [the teenager] 'used' the vehicle to injure [the victim] was attenuated from the actual legitimate purpose of an automobile." *Pfiel*, 304 Ill. App. 3d at 837. Therefore, the injuries were not covered by the policy. *Pfiel*, 304 Ill. App. 3d at 838.

¶ 34    *Jiffy Cab*, 265 Ill. App. 3d 533, made clear that the inquiry must focus on the driver's actions even in a case against a third party. In *Jiffy Cab*, a negligent hiring case, the court stated, "[C]ourts will look to the acts of the individual who was hired in determining whether coverage exists." *Jiffy Cab*, 265 Ill. App. 3d at 541. Therefore, the actions of the driver, not necessarily the insured party or the defendant, are the key to determining coverage. *Jiffy Cab*, 265 Ill. App. 3d at 541. For coverage to exist, the driver's actions must conform to the typical use of an automobile. *Jiffy Cab*, 265 Ill. App. 3d at 541. Kingsley and Cox's involvement is absolutely material to the disposition of the case.

¶ 35    In the underlying case, Cox alleges in his complaint that he was assaulted, battered, and robbed in the taxicab. Cox's testimony is provided in the underlying case and included in the summary judgment proceeding. As a result of that testimony, he is judicially estopped from now claiming that a material issue of fact exists. Cox testified that Kingsley took him into an area where he did not want to go, exited his cab and together with the other man who arrived at the scene proceeded to beat and rob him. After the beating and robbery, Kingsley, along with the other assailant returned to their respective vehicles and drove away, leaving Cox lying in the street.

¶ 36    Since coverage here is determined based on the undisputed facts of the case, Cox cannot now say that summary judgment was wrongfully decided because he is judicially estopped

from presenting a new position in a legal proceeding contrary to a position that was successfully argued in an earlier legal proceeding. *Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 891 (7th Cir. 2005). If a party has (1) taken two positions (2) that are factually inconsistent (3) in separate judicial or quasi-judicial proceedings, and (4) intended for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceeding and received some benefit from it, the party may be judicially estopped from asserting the second factually inconsistent position. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009) (quoting *Barack Ferrazzano Kirshbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003)). The Seventh Circuit has specifically found that the doctrine of judicial estoppel is meant to discourage lying because it forces parties to pick an assertion and stick with it. *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). The court in *Jiffy Cab* concluded that the scope of coverage provided under an auto liability insurance policy must end at some point, and the perpetration of a crime in or about an auto represents a point well beyond the line that must reasonably be drawn. *Jiffy Cab*, 265 Ill. App. 3d at 541. Therefore, Cox's injuries "did not arise out of the ownership, maintenance, or use of an auto" as provided by the policy at issue here. As a result, the trial court's summary judgment against Cox is affirmed.

¶ 37     The only question that now remains is whether the summary judgment against Williams is subject to a factual determination. Cox testified in the underlying case of an assault and battery perpetrated by Kingsley and others. There is no evidence in the record of this case to refute that testimony to create a factual issue. The result simply is that a crime occurred and coverage is not applicable. Although Williams claimed no involvement, his involvement is not the issue, nor is the fact that a jury found Williams liable for damages for negligent entrustment. The crime takes this case out of the purview of coverage and summary judgment against Williams must be affirmed.

¶ 38                         III. Williams's Third Party Claim

¶ 39     Williams argues that Hail Hacking was deficient in obtaining proper liability insurance as required under the Chicago Municipal Code. This argument, which is unsupported by legal precedent, is unpersuasive. The Municipal Code requires a minimum policy of $350,000 per occurrence to cover injuries resulting from occurrences caused by or arising out of the operation or use of the licensee's vehicles. Chicago Municipal Code § 9-112-220 (amended July 12, 1990). To hold that a crime committed by a third party falls under the "operation or use" clause would be to "extend the insurance coverage beyond the bounds of reason." *Pfiel*, 304 Ill. App. at 837. An injury resulting from an assault inside the vehicle is not a normal or reasonable consequence of the use or operation of a vehicle. *Pfiel*, 304 Ill. App. 3d at 838. The Municipal Code does not require licensees carry policies requiring anything beyond insuring against occurrences arising out of the normal operation or use of vehicles. Hail Hacking did obtain a policy with American Country that provided liability coverage for injuries caused by accidents resulting from the ownership, maintenance, or use of covered vehicles. Therefore, we affirm the holding of the trial court.

¶ 40                                    CONCLUSION

¶ 41      For the above reasons, we find that the trial court's holdings must be affirmed. The trial court properly granted summary judgment to American Country and Hail Hacking had no duty under the Municipal Code to provide greater insurance coverage than it did.

¶ 42      Affirmed.