# Illinois Official Reports

## Appellate Court

---

### *Shelter Mutual Insurance Co. v. Flynn*, 2020 IL App (1st) 191123

---

| | |
|---|---|
| Appellate Court Caption | SHELTER MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. HALEY FLYNN and LARRY HERSKOVITZ, Defendants (Haley Flynn, Defendant-Appellant). |
| District & No. | First District, Fourth Division<br>No. 1-19-1123 |
| Filed | April 30, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 2017-M1-119255, 2018-CH-4794; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Appeal dismissed. |
| Counsel on Appeal | Steven B. Pollack, of Lake Bluff, for appellant.<br><br>Christopher J. Pickett, Peter G. Syregelas, and Lauren E. Rafferty, of Lindsay, Pickett & Postel, LLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Lampkin and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    The instant appeal arises from a dispute over a motor vehicle insurance policy issued by plaintiff Shelter Mutual Insurance Company (Shelter Mutual) to defendant Haley Flynn. Flynn's policy originally provided liability and collision coverage for a 2010 Honda Civic. However, a few days after purchasing the vehicle, Flynn traded it in for a 2009 Honda Civic and requested the insurance agent she purchased the initial policy from to update the policy to reflect the change in vehicle; that change was never made, and the policy was renewed with the 2010 vehicle listed as the covered vehicle. Flynn then was involved in an accident involving a vehicle owned by defendant Larry Herskovitz. When Flynn filed a claim, Shelter Mutual denied Flynn's request for coverage, claiming that the 2009 vehicle was not insured under Flynn's policy. Flynn filed a small-claims lawsuit against Shelter Mutual based on its denial of coverage, and Shelter Mutual filed a counterclaim in the small-claims action, seeking declaratory judgment as to its duty to provide Flynn coverage. Shelter Mutual then also filed a separate declaratory judgment action in the chancery division of the circuit court of Cook County, seeking a declaration that it did not owe Flynn a duty to defend with respect to a lawsuit filed against her by Herskovitz. The two lawsuits were consolidated and transferred to the chancery division. Both Flynn and Shelter Mutual filed motions for summary judgment, and the trial court granted summary judgment in favor of Shelter Mutual. Flynn appeals, and for the reasons that follow, we dismiss the appeal for lack of jurisdiction.

¶ 2                                                    BACKGROUND

¶ 3    On July 7, 2017, Flynn filed a small-claims complaint in the municipal division, case No. 2017 M1 119255, against Shelter Mutual and Danna Krischke, the insurance agent, alleging that Flynn was the named insured on an automobile insurance policy issued by Shelter Mutual and procured by Krischke, which provided Flynn with collision and liability coverage. Flynn alleged that on October 17, 2016, she purchased a 2010 Honda Civic (2010 vehicle) and sent a text message to Krischke requesting insurance coverage for the vehicle. Krischke obtained coverage for Flynn under a Shelter Mutual policy with effective dates from October 17, 2016, through February 16, 2017. On October 22, 2016, Flynn took advantage of the auto dealer's trade-in policy and traded in the 2010 vehicle for a 2009 Honda Civic (2009 vehicle). On October 31, 2016, Flynn sent Krischke a text message asking her to change the insurance policy to reflect the 2009 vehicle; Flynn alleged that she "relied on Krischke to make the change and believed the change was done based on their past dealings." On January 24, 2017, Shelter Mutual billed, and Flynn paid, a policy premium of $711.20, and Shelter Mutual issued Flynn policy documents reflecting a policy period of February 16, 2017, through August 16, 2017, but still showing the insured vehicle as the 2010 vehicle that Flynn had traded in, rather than the 2009 vehicle.

¶ 4    Flynn alleged that, on March 16, 2017, she was involved in a motor vehicle accident when she rear-ended a vehicle owned by Herskovitz. The collision caused damage to the 2009 vehicle in the amount of $4700, which Flynn paid directly to the repair shop. She also incurred $1029.68 in auto rental expenses while her vehicle was being repaired, which she paid as well. The collision also caused $4606.42 in damage to Herskovitz's vehicle, which Herskovitz's insurer paid. Flynn alleged that, on March 29, 2017, she called Krischke to inform her of the

collision but was told that the 2009 vehicle "was not the covered vehicle under the policy." Krischke then charged Flynn an additional $2.80 in premium payments and sent Flynn new insurance cards showing an effective term from March 29, 2017, through August 16, 2017, and listing the 2009 vehicle as the covered vehicle. Flynn alleged that neither Krischke nor Shelter Mutual offered to refund any premiums Flynn paid on the 2010 vehicle during the policy period.

¶ 5    Flynn alleged that she made a claim for coverage under her policy but that, on April 12, 2017, Shelter Mutual denied coverage, claiming that the policy covered the 2010 vehicle and not the 2009 vehicle. On April 26, 2017, Flynn e-mailed Shelter Mutual's customer service, asking for her "current evidence of insurance cards" and received insurance cards showing a policy period from February 16, 2017, through August 16, 2017, and listing the 2009 vehicle as the covered vehicle. On May 9, 2017, Flynn again e-mailed Shelter Mutual's customer service with the same request and received the same cards.

¶ 6    Count I of the complaint was for breach of contract against Shelter Mutual and alleged that a valid contract for insurance existed between Flynn and Shelter Mutual, which covered the 2009 vehicle for damage to it by collision, for auto rental expenses, and for liability to others caused by the vehicle. Count I further alleged that Shelter Mutual breached the contract by refusing to pay Flynn for damage to the 2009 vehicle and for her auto rental and by refusing to pay for Flynn's liability to Herskovitz, "thereby making Flynn an uninsured motorist despite Flynn paying the full premiums demanded by Shelter [Mutual] for the policy period."

¶ 7    Count II of the complaint was for "waiver" against Shelter Mutual and alleged that Shelter Mutual had affirmatively waived its right to deny coverage for the 2009 vehicle when it kept the premiums paid by Flynn instead of refunding the premiums or issuing a new policy for the 2009 vehicle. Count II further alleged that Shelter Mutual waived its right to deny coverage for the 2009 vehicle by issuing evidence of insurance coverage cards on April 26, 2017, and May 9, 2017, that listed the 2009 vehicle as the covered vehicle for the policy period effective February 16, 2017, through August 16, 2017.

¶ 8    Count III of the complaint was for "vexatious and unreasonable conduct" under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2016)) against Shelter Mutual and alleged that Shelter Mutual had engaged in vexatious and unreasonable conduct in denying coverage for the collision despite issuing insurance cards showing the 2009 vehicle as a covered vehicle and despite keeping Flynn's insurance premiums.

¶ 9    Finally, count IV of the complaint was for negligence against Krischke and alleged that Krischke had a duty to exercise reasonable skill, care, and diligence to procure insurance on the correct vehicle. Count IV alleged that Krischke undertook the duty to act as Flynn's insurance agent and to procure auto insurance for her but breached that duty by failing to make the change that Flynn requested on October 31, 2016, which would have changed the covered vehicle on the policy.

¶ 10    Attached to Flynn's complaint were a number of exhibits. First was a copy of Flynn's insurance policy with Shelter Mutual, which states that it is "evidence of insurance as of 05/09/2017." Flynn is listed as the named insured, and Krischke is listed as the agent. The policy lists an effective date of February 16, 2017, through August 16, 2017, and states that the "described automobile" was the 2009 vehicle. The definitions section of the policy contains a definition of "[d]escribed auto" that provided:

"*Described auto* means the vehicle described in the *Declarations*, but only if a *named insured owns* that vehicle. It includes:

\* \* \*

(d) A temporary substitute auto."[1]

¶ 11       The policy also defined "[n]on-owned auto" as:

"*Non-owned auto* means any auto being *used, maintained*, or *occupied* with *permission*, other than:

(a) The *auto* listed in the *Declarations*;

(b) An *auto owned* by any *insured*, or a *resident* of any *insured's* household; or

(c) An *auto* that any *insured*, or a *resident* of any *insured's* household has *general consent* to *use*.

A *rental auto* is a *non-owned auto* if it is not an auto described by (a), (b), or (c) above, is not a *temporary substitute auto*, and otherwise meets the definition of *rental auto*."

¶ 12       The policy also included a provision titled "Thirty-Day Temporary Insurance on Replacement Autos," which provided, in relevant part:

"The temporary insurance provided under this section does not apply to any *claim* that is covered by any other policy of insurance regardless of the types of coverage provided by that policy.

The insurance provided by this policy with respect to the *described auto* applies to any other *auto* in which *you* acquire *ownership*, if it replaces the *described auto* and *you* no longer *own* the *described auto*. The insurance on this replacement *auto* incudes only those coverages that applied to the *described auto*. This coverage expires at the earlier of:

(1) 12:01 A.M. on the thirty-first day after *you* acquire *ownership* of the *auto*; or

(2) The date this policy lapses.

To obtain this temporary coverage, *you* must notify *us*, while this policy is in force, and within 30 days after the date *you* acquire *ownership* of the replacement *auto*, that *you* want this policy to apply to it."

¶ 13       With respect to coverage for bodily injury and property damage liability coverage, the policy provided that:

"*We* will pay *damages* on behalf of an *insured*; but this agreement is subject to all conditions, exclusions, and limitations of *our* liability, stated in this policy."

The policy further provided, in relevant part:

"*Damages* means money an *insured* is legally obligated to pay another *person* because of *bodily injury, property damage*, or *consequential loss*, caused by an *occurrence* resulting from *that insured's ownership, maintenance*, or *use*, of the *described auto* or a *non-owned auto*."

¶ 14       With respect to collision coverage, the policy provided, in relevant part:

---

[1]When quoting the insurance policy, all italicized terms are defined terms within the policy and are not used for emphasis; the policy itself denotes these terms in boldface type.

"*We* will pay the *direct loss* resulting from *property damage* to the *described auto* if it is caused by:

(1) *Accidental* upset of the *described auto*; or,

(2) *Accidental* collision between the *described auto* and another object, ***

* * *

but this agreement is subject to all conditions, exclusions, and limitations of *our* liability, stated in this policy."

¶ 15    Also attached to Flynn's complaint were several text messages between Flynn and Krischke. One set of text messages, sent on October 17, 2016, discussed insurance coverage for the 2010 vehicle, and one of Krischke's responses included an image of an insurance card showing coverage for the 2010 vehicle from October 17, 2016, through February 16, 2017. Another text message, sent October 31, 2016, asked Krischke to "switch my car insurance to the 2009 White Honda Civic"; there was no text from Krischke in response to this message.

¶ 16    Additionally, attached to Flynn's complaint was a copy of a receipt for a renewal policy, which showed that Shelter Mutual received a premium payment of $711.20 on January 24, 2017. The "Risk Description" on the receipt listed the 2010 vehicle. Another receipt showed that Shelter Mutual received a premium payment of $2.80 on March 29, 2017; the "Risk Description" on that receipt listed the 2009 vehicle.

¶ 17    Finally, attached to Flynn's complaint was an April 12, 2017, letter from Shelter Mutual. The letter indicated that on April 6, 2017, Flynn reported a loss occurring on March 16, 2017, and that "[o]ur investigation revealed that you acquired a 2009 Honda Civic *** on October 22, 2016. You were driving the 2009 Honda Civic on March 16, 2017, when you were involved in the accident." The letter further stated that Flynn had informed Shelter Mutual that she had traded in the 2010 vehicle for the 2009 vehicle and that she had sent Krischke text messages on October 31, 2016, and November 1, 2016, asking her to change the policy accordingly. After quoting the policy, the letter stated:

"Based on our investigation and this policy language, Shelter [Mutual] believes the policy does not cover this claim. Specifically, the loss occurred outside of the 30 days of temporary coverage provided under your 2010 Honda Civic's policy, for the 2009 Honda Civic that you acquired on October 22, 2016. After the 30 days of temporary coverage lapsed, you did not purchase a policy for the 2009 Honda Civic. Because no policy was purchased for the 2009 Honda Civic after you acquired it, and this loss did not occur during the available 30 day temporary coverage, there is no coverage for this accident.

Further, the policy's liability coverage applies to *damages* owed by an *insured*. The policy defines *damages* as money that an *insured* must pay because of an *occurrence* resulting from the *ownership, maintenance* or use of the *described auto*. The collision coverage applies to *property damage* that results form [*sic*] an *accidental* collision involving the *described auto*. The policy defines *described auto* as the vehicle listed in the *declarations* and *owned* by the *named insured*. Here, the accident did not involve the *described auto* as the 2009 Honda was not listed in the *declarations*. Furthermore you no longer owned the 2010 Honda, which was the vehicle listed in the *declarations*. Because the 2009 Honda cannot meet the definition of *described auto*, neither liability coverage nor collision coverage is available for this loss

Therefore, Shelter [Mutual] denies coverage for this claim under this policy." (Emphases in original.)

¶ 18 On September 1, 2017, Shelter Mutual filed a motion for leave to file a counterclaim for declaratory judgment. On September 14, 2017, the trial court entered an order granting Shelter Mutual leave to file a counterclaim and severed counts I, II, and III of Flynn's complaint (the counts directed at Shelter Mutual) and Shelter Mutual's counterclaim from count IV of the complaint (the count concerning Krischke) and ordered them transferred to the chancery division; the order granting severance was later vacated on February 1, 2018, and the matter was returned to the municipal division.

¶ 19 On September 15, 2017, Shelter Mutual filed a counterclaim for declaratory judgment, seeking an order declaring "that it does not owe any duty to reimburse Ms. Flynn for damages to her vehicle nor indemnify Ms. Flynn for any damage to the vehicle owned by *** Herskovitz, arising out of a March 16, 2017 automobile accident." Shelter Mutual claimed that it did not owe any coverage to Flynn because the 2009 vehicle "was neither a 'described auto' nor a 'non-owned auto' " under the Shelter Mutual policy and the accident occurred outside of the 30-day window for temporary coverage under the policy. As part of its counterclaim, Shelter Mutual alleged that "Ms. Flynn did not inform Shelter [Mutual] of her purchase of the 2009 Civic until after the accident." On March 14, 2018, Flynn filed an answer and affirmative defenses to the counterclaim, raising as affirmative defenses (1) the claim that Shelter Mutual's request for declaratory judgment was barred because it was seeking a declaration of nonliability for past conduct, which was impermissible, (2) the doctrine of waiver, and (3) the doctrine of unclean hands, based on Shelter Mutual's keeping Flynn's premiums. In answering Flynn's affirmative defenses, Shelter Mutual "admit[ted] that Krischke is an insurance agent for Shelter [Mutual]."

¶ 20 On April 12, 2018, Shelter Mutual filed a complaint for declaratory judgment in the chancery division, case No. 2018 CH 04794, seeking a declaration "that it does not owe any duty to defend or indemnify Ms. Flynn with respect to a property damage action brought by Mr. Herskovitz against Ms. Flynn, arising out of a vehicle collision." Shelter Mutual claimed that it did not owe any duty to defend or indemnify Flynn in Herskovitz's lawsuit "because (a) the vehicle she was driving at the time of the accident was neither a 'described auto' not a 'non-owned auto' under the Shelter [Mutual] policy; and (b) the accident occurred outside of the thirty-day window for temporary coverage under the Shelter [Mutual] policy."

¶ 21 Attached to the Shelter Mutual complaint was a March 9, 2018, amended small-claims complaint filed in the municipal division by Herskovitz against Flynn, alleging that Flynn had caused the accident by negligently operating her vehicle and seeking $4606.42 in damages.[2]

¶ 22 On April 13, 2018, Shelter Mutual filed a motion seeking to sever counts I, II, and III and Shelter Mutual's counterclaim in Flynn's small-claims case and to consolidate them with its newly filed declaratory judgment action in the chancery division. Shelter Mutual claimed that consolidation was proper because all of the claims depended on the resolution of the question of whether Shelter Mutual owed Flynn insurance coverage for the collision.

¶ 23 On April 17, 2018, in her small-claims action, Flynn filed a motion for summary judgment with respect to counts I, II, and III of her complaint against Shelter Mutual. In support of her

_____

[2]We note that the amount of damages sought by Herskovitz is the same amount that Flynn's complaint alleged that Herskovitz's insurer paid to repair his vehicle.

motion for summary judgment, Flynn attached, *inter alia*, her affidavit, in which she swore to the truth and accuracy of a number of exhibits. One such exhibit was a screenshot of text messages sent from Krischke to Flynn, which Flynn averred that Krischke provided to her. One text message on the screenshot bore a date of October 31, 2016, and stated: "Hi Danna. Please switch my car insurance to the 2009 White Honda Civic. With the Vin # above."[3]

¶ 24 On April 20, 2018, the trial court denied Shelter Mutual's motion to sever counts I, II, and III and Shelter Mutual's counterclaim in Flynn's small-claims action, but it granted Shelter Mutual's motion to consolidate over Flynn's objection, ordering Flynn's small-claims action and Shelter Mutual's chancery action consolidated into the chancery action.

¶ 25 On June 1, 2018, Flynn filed an answer and affirmative defenses to Shelter Mutual's declaratory judgment complaint, as well as a counterclaim containing two counts. Count I of the counterclaim was for breach of contract and alleged that a valid insurance policy existed between Shelter Mutual and Flynn that covered Flynn's defense and liability to Herskovitz. Count II of the counterclaim was for abuse of process and alleged that Shelter Mutual had "ulterior purposes" in filing its counterclaim to Flynn's small claims case and in seeking transfer to the chancery division; count II alleged that Shelter Mutual did so to avoid the simplified and cost-reducing procedures of the small-claims process and to deprive Flynn of the ability to seek quick resolution of her claims.

¶ 26 On June 22, 2018, Shelter Mutual filed a motion to dismiss count II of Flynn's counterclaim under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), alleging that Flynn had failed to allege sufficient facts to state a cause of action for abuse of process. On August 30, 2018, the trial court entered an order dismissing count II of Flynn's counterclaim with prejudice, finding that "[n]othing in the Counterclaim suggests any improper use of process, citing only standard motions (all granted by several judges) and pleadings, which are generally not actionable as abuses of process."

¶ 27 On September 27, 2018, Shelter Mutual filed a response to Flynn's motion for summary judgment on her small-claims counts and on its counterclaim in that action, as well as a cross-motion for summary judgment on its declaratory judgment complaint and on the small-claims complaint and counterclaim. Shelter Mutual claimed that its policy did not cover the 2009 vehicle at the time of the collision, so Shelter Mutual was entitled to summary judgment on all counts. In response to Shelter Mutual's cross-motion for summary judgment, Flynn claimed, *inter alia*, that summary judgment was inappropriate until it was determined whether Krischke had the authority to bind Shelter Mutual because, if so, her failure to act on Flynn's request to change the insurance coverage would be imputed to Shelter Mutual. Flynn also argued that Illinois law required the Shelter Mutual policy to insure her for liability when driving any vehicle she owned. Attached to Flynn's response was a Rule 191(b) affidavit (Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013)), averring that discovery was necessary to properly determine whether Flynn was covered under the policy. In support of the affidavit, Flynn attached an April 14, 2017, letter sent to her by Shelter Mutual in response to a claim she made against Krischke under Krischke's error and omissions policy. In the letter, a senior litigation attorney for Shelter Mutual stated that Krischke received text messages from Flynn concerning a 2009

---

[3]We note that the screenshot from Krischke's phone does not display all of the same texts shown on screenshots from Flynn's phone, with texts containing the 2009 vehicle's vehicle identification number missing.

Civic but that Krischke "thought you were just following up on the car you had already insured." The attorney further stated that, after investigation, Shelter Mutual determined that Krischke acted reasonably in handling Flynn's coverage because "[t]he texts at issue here were confusing."

¶ 28 On May 3, 2019, the trial court entered an order on the cross-motions for summary judgment. The court first found that there were no material facts in dispute, finding unpersuasive Flynn's claims that there were questions of fact. The court found that the only factual issues raised by Flynn were waiver and Krischke's relationship with Shelter Mutual, and it found that "[s]uch relationship is immaterial because Flynn provides no evidence of any assurance/acceptance (or any response whatsoever on [Shelter Mutual's] behalf) of her text-message request to change the covered vehicle." Next, the court found that Flynn conceded that the vehicle that she was driving was not the vehicle listed on the policy and found that there was "no support" for the claim that Shelter Mutual had waived any denial of the claim by keeping Flynn's premium payments or by issuing new insurance cards. The court concluded:

"4. For these reasons, the court must conclude that Shelter [Mutual] owes no duty to defend or indemnify Flynn in connection with the March 16, 2017 incident. Further, because the court finds [Shelter Mutual's] denial of coverage was well grounded, it is also entitled to judgment on Flynn's claim under 215 ILCS 5/155 (for vexatious and unreasonable denial of a claim).

5. Flynn's Motion is accordingly DENIED and [Shelter Mutual's] Motion is GRANTED in that judgment is hereby entered in favor of Shelter [Mutual] and against Flynn on the Complaint and Counterclaim. This is a final and appealable Order."

¶ 29 This appeal follows.

ANALYSIS

¶ 31 On appeal, Flynn challenges both the trial court's dismissal of her abuse of process claim, as well as the grant of summary judgment in Shelter Mutual's favor, including the denial of discovery prior to granting the motion. First, however, we must address Shelter Mutual's claim that we lack jurisdiction to consider the instant appeal. The question of whether we have jurisdiction over an appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 32 "Appellate jurisdiction is confined to reviewing final judgments unless the order to be reviewed comes within one of the exceptions for interlocutory orders specified by the supreme court." *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 950 (1992). "In general, a final and appealable judgment is defined as one in which the trial court has determined the merits of the parties' claim, such that the only remaining action is to proceed with execution of the judgment." *In re Estate of French*, 166 Ill. 2d 95, 101 (1995).

¶ 33 In the case at bar, the litigation between the parties consisted of (1) Flynn's small-claims action, which contained counts aimed at Shelter Mutual and at Krischke, (2) Shelter Mutual's

counterclaim in the small-claims action, (3) Shelter Mutual's declaratory judgment complaint in the chancery division, and (4) Flynn's counterclaim in Shelter Mutual's chancery action. Both Flynn and Shelter Mutual sought summary judgment with respect to the counts aimed at each other, and the trial court granted summary judgment in Shelter Mutual's favor, finding that "[t]his is a final and appealable Order." There is no dispute that the trial court's order did not expressly address Flynn's negligence claim against Krischke. Thus, we must determine the effect of the claim against Krischke with respect to the appealability of the trial court's summary judgment order.

¶ 34    Flynn makes two arguments concerning our jurisdiction to consider the instant appeal. First, to the extent that her claim against Krischke remains pending, Flynn argues that we have jurisdiction under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016)), despite the lack of a finding as required under that rule. Under Rule 304:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 35    In the case at bar, the parties do not dispute that the trial court's finding that "[t]his is a final and appealable Order" does not suffice as a Rule 304(a) finding. See, *e.g.*, *In re Marriage of Sanchez*, 2018 IL App (1st) 171075, ¶ 27 (finding no jurisdiction where trial court order stated " '[t]his is a final and appealable order' "); *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011) (finding no jurisdiction where trial court order stated that the order was " 'final and appealable' "). Instead, Flynn claims that no Rule 304(a) finding was required, because her small-claims case and the declaratory judgment case were consolidated for purposes of economy and retained their distinct character.

¶ 36    "Where a consolidation concerns several actions involving an inquiry into the same event in its general aspects and is limited to a joint trial, with separate docket entries, verdicts and judgments, an order dismissing one of the actions is deemed final and immediately appealable." *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill. App. 3d 528, 532 (1996). In such a case, Rule 304(a) language is not necessary to render the order appealable. *Nationwide*, 285 Ill. App. 3d at 532. "Where several actions actually merge into one action, however, thereby losing their identity, they are disposed of as one suit and Supreme Court Rule 304(a) language is necessary before an appeal of dismissal of less than all counts will be heard." *Nationwide*, 285 Ill. App. 3d at 532.

¶ 37    In the case at bar, Flynn claims that her small-claims case and Shelter Mutual's declaratory judgment case did not merge but retained their distinct character despite the consolidation. By contrast, Shelter Mutual argues that the two causes were consolidated because they were interrelated, not merely for convenience. However, both parties fail to discuss the fact that the trial court's order was not simply an order granting summary judgment on Shelter Mutual's declaratory judgment complaint but was also a grant of summary judgment on the counts of Flynn's complaint aimed at Shelter Mutual, as well as on Shelter Mutual's counterclaim in the small-claims action. Thus, the question is not whether an appeal may be taken from one

consolidated case when the other case remains pending but instead is whether Rule 304(a) language is required when several counts of a complaint are disposed of while one count of that same complaint remains pending. In such a situation, it is well settled that Rule 304(a) requires an express finding to render the order appealable. See, *e.g.*, *Kurr v. Town of Cicero*, 208 Ill. App. 3d 455, 457 (1990) (finding no jurisdiction to review an order granting summary judgment on count I of a complaint where count II remained pending and there was no Rule 304(a) finding). Accordingly, we cannot find that Rule 304(a) permits appeal of the trial court's summary judgment order in the absence of an express finding.

¶ 38 However, Flynn also argues that the trial court's order disposed of her claim against Krischke as well as her claims against Shelter Mutual because the trial court's order included a finding that Krischke's relationship with Shelter Mutual was "immaterial because Flynn provides no evidence of any assurance/acceptance (or any response whatsoever on [Shelter Mutual's] behalf) of her text-message request to change the covered vehicle." In the context of summary judgment, a dismissal order that does not dispose of all claims can be appealed if the order granting summary judgment "necessarily entailed" the disposition of the issues raised in the remaining claim as well. (Internal quotation marks omitted.) *American Country Insurance Co. v. Chicago Carriage Cab Corp.*, 2012 IL App (1st) 110761, ¶ 21. "In such a case, a court of review has jurisdiction even without Rule 304(a) language." *American Country Insurance*, 2012 IL App (1st) 110761, ¶ 21. Thus, we must determine whether the trial court's order necessarily entailed the disposition of Flynn's claim against Krischke.

¶ 39 In the case at bar, count I of Flynn's complaint was for breach of contract against Shelter Mutual and alleged that a valid contract for insurance existed between Shelter Mutual and Flynn that provided coverage for the 2009 vehicle. Flynn does not dispute that the insurance policy originally provided coverage for the 2010 vehicle, not the 2009 vehicle. However, according to Flynn's complaint, coverage for the 2009 vehicle was procured through Flynn's communications with Krischke, as Shelter Mutual's agent. Thus, in order for the trial court to grant summary judgment in Shelter Mutual's favor on count I of Flynn's complaint, the trial court necessarily would have needed to find that Krischke's actions—or nonactions, as the case may be—did not result in an insurance policy that provided coverage for the 2009 vehicle. The trial court appears to have done so by finding that Flynn failed to show that Krischke agreed to make the change. While this finding clearly concerns the relationship between Flynn and Krischke, we cannot agree that this finding resolved Flynn's claims against Krischke, as Flynn suggests.

¶ 40 The trial court was presented with one question: what did the terms of the applicable insurance policy provide? It answered that question and found that the policy provided coverage for the 2010 vehicle, not the 2009 vehicle. By contrast, count IV of Flynn's complaint asked a different question: was Krischke negligent in failing to take the proper steps to amend the insurance policy?[4] The trial court's order did not address that question, and there is no suggestion in its order that the court was making a finding concerning the propriety of Krischke's lack of response—it only referred to the *fact* of the lack of response as indicating that the policy had not been amended to change the covered vehicle. Indeed, this limited

---

[4]We note that none of the counts against Shelter Mutual were based on vicarious liability for Krischke's alleged negligence, nor did they seek reformation of the policy on the grounds of mutual mistake.

finding was contained in a footnote explaining why there were no material facts in dispute, and did not constitute a part of the trial court's analysis of the issues. Thus, we cannot agree with Flynn that the trial court's order disposed of all issues in the litigation such that it was a final and appealable order. Consequently, the trial court would have needed to make a Rule 304(a) finding in order to render its summary judgment order appealable. In the absence of such a finding, we must find that we lack jurisdiction to consider Flynn's appeal.

¶ 41                                        CONCLUSION
¶ 42        For the reasons set forth above, we find that we lack jurisdiction to consider Flynn's appeal. The order from which Flynn appeals did not dispose of all claims against all parties, meaning that a finding under Rule 304(a) was required to render the order appealable. In the absence of such an order, the appeal must be dismissed.

¶ 43        Appeal dismissed.